DOMAKO v ROWE

Docket No. 112776. Submitted March 13, 1990, at Detroit. Decided
    June 5, 1990. Leave to appeal applied for.

Carol Joyce Domako and her husband, Thomas Domako, filed suit
    against Joseph Rowe, M.D., and others in Wayne Circuit Court,
    alleging medical malpractice. Following trial, the jury returned
    a verdict of no cause of action. Plaintiffs moved for judgment
    notwithstanding the verdict or a new trial. The motions were
    denied with prejudice, Marianne Battani, J. Plaintiffs appealed.

    The Court of Appeals *held:*

    1. The trial court correctly denied plaintiffs' motion for
    summary disposition as to the issue whether surgery performed
    by Rowe was the proximate cause of a hole in Carol Domako's
    bladder, which caused her to suffer urinary incontinence. Testi-
    mony indicated that the surgery was the causation in fact of
    the hole, but it did not establish that the surgery was the legal
    cause of the injury. There was conflicting testimony as to
    whether Rowe could have foreseen development of the hole
    based on the care he rendered to Domako. Thus, reasonable
    minds could reach differing conclusions as to whether Rowe's
    conduct was the legal cause of the hole.

    2. The trial court did not abuse its discretion in denying
    plaintiffs' motion for a new trial, which was premised on the
    basis that the jury's verdict was against the great weight of the
    evidence. There was competent evidence to support the verdict.

    3. The trial court did not err in denying plaintiffs' motion for
    judgment notwithstanding the verdict. After considering the
    evidence, reasonable persons could honestly reach different
    conclusions as to whether Rowe was negligent and whether his
    negligence, if any, was the legal cause of Carol Domako's
    injury.

    4. The trial court did not err in ruling that the physician/

REFERENCES
Am Jur 2d, Judgments §§ 106-108, 117; Negligence §§ 427-431, 443-
    448, 475-481, 488-491; Physicians, Surgeons, and Other Healers
    §§ 359, 360, 363; Summary Judgment §§ 27-29; Witnesses §§ 274,
    280.
Proximate cause in malpractice cases. 13 ALR2d 11.

patient privilege as it existed between Carol Domako and her treating physician, Dr. Abbassian, had been waived as to testimony by Dr. Abbassian concerning his treatment of Domako and the causation of the hole in Domako's bladder.

5. The trial court did not err in giving the standard cautionary jury instruction on medical uncertainties and the standard jury instruction on the duty to mitigate damages through the exercise of ordinary care. The instructions accurately and concisely informed the jury of the source from which a doctor's liability springs in a medical malpractice action and were supported by the evidence.

Affirmed.

1. MOTIONS AND ORDERS — SUMMARY DISPOSITION — FAILURE TO STATE A VALID DEFENSE — COURT RULES.

A motion for summary disposition based on the failure to state a valid defense tests the legal sufficiency of the pleaded defense; the motion is tested by reference to the pleadings alone, with all well-pleaded allegations accepted as true, and by determining whether a defendant's defenses are so clearly untenable as a matter of law that no factual development could possibly deny plaintiff's right to recovery; in addition, summary disposition is improper under this rule where a material allegation of the complaint is categorically denied (MCR 2.116[C][9]).

2. TORTS — CAUSATION IN FACT — PROXIMATE CAUSE — FORESEEABILITY.

Causation in fact is one aspect of, and distinguishable from, legal or proximate cause; the question of fact as to whether the defendant's conduct was a cause of the plaintiff's injury must be separated from the question as to whether the defendant should be legally responsible for the plaintiff's injury; legal cause is often stated in terms of foreseeability, i.e., whether it was foreseeable that the actor's conduct could create a risk of harm to the victim and whether the result of that conduct and intervening causes were foreseeable; foreseeability concerns whether the defendant's acts are so significant and important a cause of the plaintiff's injury that the defendant should be held legally responsible.

3. TORTS — PROXIMATE CAUSE — QUESTIONS OF LAW — QUESTIONS OF FACT.

If facts bearing upon aspects of proximate cause other than causation in fact are not in dispute and if reasonable minds could not differ about applying the legal concept of proximate

cause to those facts, then the issue is one of law for the court; if reasonable minds could differ, the issue of proximate cause is for the jury to decide on the basis of the court's instructions as to the law; hence, where reasonable minds might differ regarding application of the reasonableness of the risk of harm, the question is best left to the jury.

4. TRIAL — JURY — VERDICTS.

A jury's verdict should not be set aside if there is competent evidence to support it.

5. MOTIONS AND ORDERS — JUDGMENT NOTWITHSTANDING THE VERDICT — APPEAL.

The Court of Appeals, when reviewing a claim of an improper denial of a motion for judgment notwithstanding the verdict, views the facts, and all the legitimate inferences drawn therefrom, in a light most favorable to the party opposing the motion; if reasonable persons could honestly reach different conclusions, the motion was properly denied.

6. EVIDENCE — PHYSICIAN-PATIENT PRIVILEGE — EX PARTE COMMUNICATIONS.

The law permits a defense counsel to have ex parte communications with a plaintiff's treating physician where the plaintiff has failed to invoke the physician-patient privilege.

7. EVIDENCE — PHYSICIAN-PATIENT PRIVILEGE — WAIVER.

The physician-patient privilege of confidentiality may be waived by a lack of timely assertion of the privilege (MCR 2.314[B][1]).

8. NEGLIGENCE — MEDICAL MALPRACTICE — JURY INSTRUCTIONS — MEDICAL UNCERTAINTIES.

No error resulted from a trial court's giving of the standard cautionary jury instruction on medical uncertainties in a medical malpractice action where the instruction accurately and concisely informed the jury of the source from which a doctor's liability springs in a medical malpractice action and the giving of the instruction was supported by the evidence in the record (SJI2d 30.04).

*Fieger & Fieger, P.C.* (by *Geoffrey N. Fieger*), for plaintiff.

*Schureman, Frakes, Glass & Wulfmeier* (by *J. Kelly Carley*), for defendants.

Before:MacKenzie, P.J., and Doctoroff and T. G. Kavanagh,* JJ.

Per Curiam. In this suit for medical malpractice, a Wayne Circuit Court jury returned a verdict of no cause of action against plaintiffs and in favor of defendants. Plaintiffs' motions for judgment notwithstanding the verdict or a new trial were denied with prejudice. On appeal, plaintiffs raise five issues: (1) Whether the trial court erred in denying plaintiffs' motions for summary disposition as to proximate cause. (2) Whether the trial court erred in denying plaintiffs' motion for a new trial premised on a claim that the jury's verdict was against the great weight of the evidence. (3) Whether the trial court erred in denying plaintiffs' motion for judgment notwithstanding the verdict because there was insufficient evidence to support a valid factual defense offered on behalf of defendant, Joseph Rowe, M.D. (4) Whether the trial court erred in finding that plaintiff Joyce Domako waived her physician-patient privilege as pertains to her treating physician, Dr. A. Abbassian; and (5) Whether the trial court erred in instructing the jury with SJI2d 30.04 and 53.05. We are not convinced that any error warranting reversal was committed and, accordingly, we affirm.

I

The facts giving rise to this lawsuit are not complicated. Joyce Domako sought out defendant Rowe because of an abnormal vaginal discharge. Rowe's examination revealed an abnormal uterus. Thereafter, Rowe performed a hysterectomy and a

---

* Former Supreme Court justice, sitting on the Court of Appeals by assignment.

right salpingo-oophorectomy.[1] He also removed a prominent fibroid tumor located on the lower anterior of Domako's uterus. During postoperative recovery Domako began experiencing incontinence. This condition steadily worsened. A vesicovaginal fistula—a hole in Domako's bladder creating an abnormal passage between the interior of her bladder and the interior of her vagina—was discovered to be the cause of the incontinence. The hole was surgically repaired by Abbassian. The instant lawsuit followed.

Plaintiffs alleged that the hole in Domako's bladder was caused by Rowe's negligent conduct during the performance of the hysterectomy. Rowe denied any wrongdoing. He asserted that the hole was the result of the fibroid tumor pressing against the surface of the bladder which in turn caused the depletion of the blood supply to the affected area of the bladder wall and a consequent weakening and death of the cell structure on the wall.

While the parties disagreed as to the cause of the fistula, all agreed that the fistula probably would not have developed if Domako had not had the surgery. Both sides also agreed that the operation was necessary.

II

Plaintiffs argue that reversal is warranted because the trial court erroneously denied their motion for summary disposition on the issue of proximate cause.

Following the close of proofs, plaintiffs moved for summary disposition pursuant to MCR 2.116(C)(9), failure of the opposing party to state a valid defense to a claim asserted against that party.

---

[1] The surgical removal of a uterine tube and an ovary.

Plaintiffs argued that they were entitled to summary disposition because defendants failed to demonstrate that the surgery performed by Rowe was not the proximate cause of the fistula. The trial court denied the motion, finding that reasonable persons could disagree as to the cause of the injury. Thereafter, the issue of proximate cause was submitted to the jury.

A concise summary of the appropriate standard of review was set forth by a panel of this Court in *City of Hazel Park v Potter,* 169 Mich App 714, 718; 426 NW2d 789 (1988):

> A motion for summary disposition pursuant to MCR 2.116(C)(9), formerly GCR 1963, 117.2(2), for failure to state a valid defense tests the legal sufficiency of the pleaded defense. Such motion is tested by reference to the pleadings alone, with all well-pled allegations accepted as true. The proper test is whether defendant's defenses are "so clearly untenable as a matter of law that no factual development could possibly deny plaintiff's right to recovery." *Hanon v Barber,* 99 Mich App 851, 854-855; 298 NW2d 866 (1980). In addition, summary disposition is improper under this rule when a material allegation of the complaint is categorically denied. *Pontiac School Dist v Bloomfield Twp,* 417 Mich 579, 585; 339 NW2d 465 (1983).

Plaintiffs argue that the testimony of Rowe and his expert witnesses to the effect that the fistula would not have occurred absent the surgery conclusively established that the fistula was proximately caused by the surgery performed by Rowe. The resolution of the instant issue requires a brief discussion of the distinction between causation in fact and legal or proximate cause.

In *Richards v Pierce,* 162 Mich App 308, 316-317; 412 NW2d 725 (1987), a panel of this Court stated:

Causation in fact is one aspect of, and distinguishable from, legal or proximate cause. *Moning v Alfono,* 400 Mich 425, 438-439; 254 NW2d 759 (1977), reh den 401 Mich 951 (1977), supplemental order 402 Mich 958 (1978). The question of fact as to whether the defendant's conduct was a cause of the plaintiff's injury must be separated from the question as to whether the defendant should be legally responsible for the plaintiff's injury. Prosser & Keeton, Torts (5th ed), § 42, pp 272-273, 279. Legal cause is often stated in terms of foreseeability. See McMillan v *State Highway Comm,* 426 Mich 46, 61-62; 393 NW2d 332 (1986).[5]

If facts bearing upon aspects of proximate cause other than causation in fact are not in dispute and if reasonable minds could not differ about applying the legal concept of "proximate cause" to those facts, then the issue is one of law for the court. But if reasonable minds could differ, the issue of "proximate cause" is for the jury to decide based on the court's instructions as to the law. *Id.* at 63, n 8. Hence, where reasonable minds might differ regarding application of the reasonableness of the risk of harm, the question is best left to the jury. 426 Mich 63.

---

[5] Forseeability—whether it is foreseeable that the actor's conduct may create a risk of harm to the victim, and whether the result of that conduct and intervening causes were foreseeable—concerns whether the defendant's acts are so significant and important a cause of the plaintiff's injury that the defendant should be held legally responsible. 426 Mich 61-62.

---

Plaintiffs are correct insofar as they assert that the medical testimony established that the surgery was the *causation in fact* of the fistula. However, the medical testimony did not establish conclusively that the surgery was the legal cause of the injury. While plaintiffs' expert testified that the fistula was the result of Rowe's negligent surgical performance, there was conflicting testimony as to whether Rowe could have foreseen the fistula's

development on the basis of the care he rendered to Domako. Accordingly, reasonable minds could reach differing conclusions as to whether Rowe's conduct *legally caused* the fistula. The trial court correctly denied plaintiffs' motion.

III

Plaintiffs next argue that reversal is required because the trial court abused its discretion in denying plaintiffs' motion for a new trial. Plaintiffs argue that the verdict reached by the jury is against the great weight of the evidence because the proofs conclusively establish "that the proximate cause of the injury was the surgical intervention by Dr. Rowe and that the surgical intervention was performed negligently."

MCR 2.611(A)(1)(e) provides that a trial court may grant a new trial on any or all issues when the verdict returned by the jury is against the great weight of the evidence. The grant or denial of a motion for new trial is left to the sound discretion of the trial court. We will not disturb the trial court's ruling absent an abuse of discretion. *Bosak v Hutchinson,* 422 Mich 712, 737; 375 NW2d 333 (1985), reh den 424 Mich 1201 (1985). A jury's verdict should not be set aside if there is competent evidence to support it. *Bell v Merritt,* 118 Mich App 414, 422; 325 NW2d 443 (1982), lv den 417 Mich 954 (1983).

As previously noted, the medical evidence adduced at trial established causation in fact but not legal causation. Moreover, a further review of the record reveals that Rowe did not admit to causing the fistula. In fact, Rowe specifically denied causing it. Additionally, there was testimony that Rowe was not negligent in the performance of the surgery and that his conduct did not cause the

fistula. On such an evidentiary record we conclude that there was competent evidence to support the verdict. The trial court did not abuse its discretion in denying plaintiffs' motion for a new trial.

IV

Plaintiffs also argue that reversal is required because the trial court erroneously denied their motion for judgment notwithstanding the verdict. Plaintiffs argue:

> [T]he only fair, unbiased and impartial interpretation of evidence was that the Defendant Rowe was the proximate cause of the Plaintiff's injury and that the Defendant was negligent by injuring the Plaintiff's bladder during the course of the hysterectomy.

We beg to differ.

When reviewing a claim of an improper denial of a motion for judgment notwithstanding the verdict, we view the facts, and all the legitimate inferences drawn therefrom, in a light most favorable to the party opposing the motion. If reasonable persons could honestly reach different conclusions, the motion was properly denied. *Troyanowski v Village of Kent City,* 175 Mich App 217, 223-224; 437 NW2d 266 (1988).

In the instant case there was conflicting expert testimony as to whether Rowe's conduct amounted to the legal cause of the fistula. Accordingly, we conclude that reasonable persons could reach differing conclusions. The motion was properly denied.

V

Plaintiffs argue that reversal is required because

the trial court erroneously ruled that Domako had waived the physician-patient privilege as it existed between her and her treating physician, Dr. A. Abbassian. Plaintiffs assert that the trial court concluded that Domako had waived the privilege "because Defendant had listed Dr. Abbassian as an expert witness."

Subsequent to plaintiffs' filing of the instant lawsuit, Domako signed a release authorizing Abbassian to permit defendants access to Domako's medical records. After receiving and reviewing the records, defense counsel met with Abbassian to discuss the treatment rendered to Domako and Abbassian's conclusions concerning the cause of the fistula. On November 19, 1987, plaintiffs filed their witness list. Abbassian's name appeared on the list. Defendants filed their witness list on November 30, 1987. Defendants also listed Abbassian as a witness. However, defendants listed Abbassian as an expert witness. Plaintiffs raised no objection.

As trial approached, defendants noticed the de bene esse deposition of Abbassian. Again plaintiffs raised no objection. The deposition was held on April 6, 1988. At the deposition, plaintiffs' counsel attacked Abbassian for betraying the physician-patient privilege which existed between the doctor and Domako. He then threatened Abbassian with a lawsuit for breach of privilege. At that point, Abbassian refused to continue with the deposition. The following day plaintiffs' counsel had a letter hand delivered to Abbassian. In that letter, plaintiffs' counsel wrote in part:

Frankly, I find the fact that you have assisted and cooperated with the defense counsel in this matter, *against your patient,* reprehensible, and I have been authorized to institute legal action

against you with the proper licensing authorities, as well as in the Circuit Court for the County of Wayne if you endeavor to further breach the physician/patient privilege and assist another physician and attorney against *your own patient*!

* * *

I suggest that you discuss this matter with your personal attorney and ask that attorney to contact me; because, if it is your intent to, nevertheless, continue to participate in this matter against your patient, I will immediately prepare the necessary complaints to be filed against you.

That same day defendants filed an emergency motion to bar plaintiffs from introducing at trial evidence of Domako's medical condition or, in the alternative, for a determination that Domako had waived any privilege as regarded her relationship with Abbassian. The hearing on defendants' motion took place on April 11, 1988. At the close of the hearing, the trial court held that Domako had waived the privilege, that the de bene esse deposition of Abbassian could be taken by defendants and that Abbassian would be allowed to testify as to his treatment of plaintiff and as to his opinion on the cause of the fistula. Additionally, plaintiffs' counsel was ordered not to assert the privilege at the deposition or otherwise harass, humiliate or threaten Abbassian.

Plaintiffs assert that the trial court concluded that the privilege was waived because defendants listed Abbassian as an expert witness. We have reviewed the transcript of the motion hearing and find nothing contained therein that would support plaintiffs' assertion. What a review of the transcript does reveal is that plaintiffs' counsel stated that he had no objection to Abbassian "testifying as to what he did." The transcript also reveals

that plaintiffs' counsel made the following state-
ment on the record:

> I don't object to him saying what caused it. I
> object to standard of care testimony. If that—if
> he's not going to give standard of care testimony,
> and I think he is, because that's the purpose of the
> testimony, he can say what he thinks caused it,
> because frankly his medical records don't say what
> caused it, but if he can say that, that's fine.

Thereafter, the trial court issued a ruling from the
bench that embodied plaintiffs' counsel's state-
ments. On this record we conclude that plaintiffs'
counsel's statements constitute a waiver of privi-
lege as to the nature of the treatment received by
Domako and as to Abbassian's opinion concerning
the cause of the fistula. Moreover, because the
court ruled that the privilege was waived only as
to testimony concerning the treatment and causa-
tion of the fistula, we conclude that the court
committed no error. Reversal is unwarranted as
the trial court appropriately limited the deposition
testimony of Abbassian to preserve the only privi-
lege plaintiffs sought to assert.

In a related argument, plaintiffs assert that "the
more egregious error was the fact that the Court's
ruling specifically allowed defense counsel to par-
ticipate in ex parte communications with Dr. Ab-
bassian." Plaintiffs' argument is without merit as
the law permits a defense counsel to have ex parte
communications with a plaintiff's treating physi-
cian. *Gailitis v Bassett,* 5 Mich App 382; 146
NW2d 708 (1966). Although *Gailitis* was handed
down before the adoption of the Michigan Court
Rules of 1985, there is nothing in the new court
rules that suggest that they were intended to limit
discovery formerly allowed. On the contrary, the
new rules were intended to further liberalize

Michigan's already open discovery process. Absent an invocation of the privilege, and we can find none in the record before us, the ex parte communications were proper. Privilege has been waived by a lack of timely assertion. MCR 2.314(B)(1); see also *Schuler v United States,* 113 FRD 518 (WD Mich, 1986).[2]

## VI

Finally, plaintiffs argue that reversal is required because the trial court gave the standard cautionary instruction on medical uncertainties, SJI2d 30.04, and the standard instruction on the duty to mitigate damages through the exercise of ordinary care, SJI2d 53.05. Plaintiffs assert that neither instruction was warranted on the evidence adduced at trial.

Our Supreme Court has provided some guidance regarding circumstances under which the giving of SJI2d 30.04 is appropriate:

> Where proofs put the significance of an adverse result in issue, it may be more appropriate to explain the physician's duty of care by advising the jury that there are inherent risks in medical treatment which are beyond the physician's control. In all events, like the Standard Jury Instructions, the giving of supplemental instructions are to be determined by the trial court "not in an abstract or theoretical sense, but in the context of the 'personality' of the particular case on trial, and with due regard for the adversaries' theories of the case and of counsel's legitimate desire to structure jury argument around anticipated jury

[2] We acknowledge that our resolution of the instant issue conflicts with this Court's decisions in *Lawrence v Bay Osteopathic Hospital, Inc,* 175 Mich App 61; 437 NW2d 296 (1989), and *Jordan v Sinai Hospital of Detroit, Inc,* 171 Mich App 328; 429 NW2d 891 (1988), lv den 432 Mich 912 (1989).

instruction." *Johnson v Corbet,* 423 Mich 304, 327; 377 NW2d 713 (1985). [*Jones v Porretta,* 428 Mich 132, 146; 405 NW2d 863 (1987).]

The objected-to instruction accurately and concisely informed the jury of the source from which a doctor's liability springs in a medical malpractice action. Moreover, the giving of the instruction was supported by the evidence in the record. The medical testimony introduced at trial could have led a reasonable jury to conclude that the fistula developed as a result of a risk inherent in the medical treatment received by Domako and not because of any negligence on the part of Rowe. Such a conclusion would be consistent with defendants' theory of the case. Accordingly, we conclude that the trial court did not err in giving SJI2d 30.04.

We also conclude that the trial court did not err in giving SJI2d 53.05. Domako testified that she continues to suffer from frequent urination. She also testified that she had not sought medical treatment concerning this problem. On the basis of this testimony we conclude that there was evidence to support the instruction. *Body Rustproofing, Inc v Michigan Bell Telephone Co,* 149 Mich App 385, 390; 385 NW2d 797 (1986).

Affirmed.