# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

NATHAN LAVERN DUREN,

Defendant-Appellant.

UNPUBLISHED
May 10, 2016

No. 324836
Wayne Circuit Court
LC No. 14-005911-FC

Before: BOONSTRA, P.J., and METER and BECKERING, JJ.

PER CURIAM.

Defendant appeals by right his convictions, following a bench trial, of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, felon in possession of a firearm (felon-in-possession), MCL 750.224f, and two counts of felonious assault, MCL 750.82. The trial court sentenced him as a fourth-offense habitual offender, MCL 769.12, to five years in prison for the felony-firearm conviction, to be served consecutive to concurrent prison sentences of 1 to 10 years each for the felon-in-possession and felonious assault convictions. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises out of the discharge of a firearm following an argument. Joseph Fleming testified that he had a verbal altercation with a neighbor, who he primarily referred to as "Miss Kisha," about her using profanity around children who were staying at his house. He testified that Kisha was on his porch swearing at the children, and that when he approached Kisha and asked her why she was using profane language around the children, she responded: "[O]ld man, bad mouth mother f**ker, I got something for you." She then said that she was "going to put eight of them, that makes sixteen, I'm going to put all of them in your bad mouth a**." He testified that he understood this as a threat to shoot him. He testified that Kisha went back to her house and spoke with defendant. Fleming went inside and called the police, who responded, stayed 15 to 20 minutes, went to Kisha's house, and left.

Fleming testified that, almost immediately after the police left, defendant came out of Kisha's house, which was across the street and a few houses away, and walked toward his house. According to Fleming, defendant was wearing dark clothing and had a small white bag tied to his coat, and Fleming thought there was a gun in the bag, although he never actually saw a gun.

-1-

Fleming testified that defendant "told us what he was going to do," although he did not elaborate on the meaning of this statement. Fleming also testified that defendant said "I done been to the penitentiary and I don't care." Fleming testified that defendant then walked toward a black Jeep parked in Kisha's driveway and went behind it, where Fleming lost sight of him. Fleming then heard two gunshots, and recalled that he told the woman staying with him (Lakisha Beauford, hereinafter "Beauford"), who was in the yard with her children at the time,[1] to "cover her babies" (i.e., protect her children). Fleming testified that he never actually saw defendant fire the shots, but that the shots had come from behind the Jeep and defendant was the only one behind the Jeep at the time, as Kisha had gone into the backyard through a gate. Fleming testified that defendant went into Kisha's house after the shots were fired, as did Kisha. Fleming also testified that another man was on the porch of Kisha's house when the shots were fired, and that when police arrived, they handcuffed that man first, until he told police that they had the wrong man.

Responding police officers recovered a .45 caliber handgun from a closet in Kisha's home and two spent .45 caliber shell casings from Kisha's driveway. Police arrested defendant, who was wearing all black clothing, in Kisha's house.

Defendant presented the testimony of a friend, Keith Holcomb, that he and defendant were in the backyard "fixing [defendant's] lights" when they heard the shots and went to the front yard to see where they had come from. He also testified that he did not observe any altercation between Fleming and Kisha. He testified that he was handcuffed by police when they arrived, but was later released, and that he did not inform the police, either on the day of the shooting or at any point prior to trial, that he was with defendant in the backyard when the shots were fired.

Defendant was charged with assault with intent to commit murder, MCL 750.83, felony-firearm,[2] felon in possession of a firearm, and two counts of felonious assault, on Fleming and Beauford. The parties stipulated that defendant had a prior felony conviction and that his right to possess a firearm had not been restored. At trial, the trial court also considered the lesser offense

---

[1] The trial transcript does not reflect Beauford's location during the initial argument between Kisha and Fleming. Fleming stated at one point when describing the initial argument that "Kisha had her back to the door." The record is unclear as to whether this refers to Beauford (whom Fleming also called Kisha) or his neighbor Kisha; despite Fleming's claim that he always referred to his neighbor as "Miss Kisha", the record reflects that he referred to her as merely "Kisha" on one other occasion. Additionally Fleming's testimony immediately following the above statement concerned the actions of his neighbor Kisha, not Beauford. Although the fact that Beauford's children were outside during the initial argument, as well as the fact that Beauford was outside when the shots were fired, could support the inference that Beauford was also outside or on the porch during the argument and thus heard the threat, it is not clear from the record that the trial court made such an inference, and we find it unnecessary to draw such an inference in holding that the evidence against defendant was sufficient.

[2] Defendant originally was charged with carrying a dangerous weapon with unlawful intent, MCL 750.226, but that charge was subsequently amended.

of assault with intent to do great bodily harm less than murder, MCL 750.84. The trial court found defendant not guilty of assault with intent to commit murder and assault with intent to do great bodily harm. The trial court reasoned that "there's been no evidence presented of where these shots were fired to. For all we know, the shots were fired up into the air." However, the trial court found Fleming's testimony credible and concluded that defendant had fired the shots, noting that Fleming had testified that Kisha had gone to the backyard when the shots were fired from behind the Jeep. With regard to felonious assault, the trial court concluded that there was proof beyond a reasonable doubt that defendant, not Kisha, possessed a handgun, and that defendant intended to create fear or apprehension in Fleming and Beauford by firing the weapon and making threats to Fleming beforehand. The trial court cited Fleming's testimony that defendant told people what he was going to do and, more specifically, that he had been to the penitentiary and "didn't care." The trial court thus convicted defendant of two counts of felonious assault, and one count each of felon in possession of a firearm and felony-firearm.

This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

On appeal, defendant first argues that there was insufficient evidence to support his convictions. We disagree. This Court reviews de novo the sufficiency of the evidence in a bench trial. *People v Lanzo Constr Co*, 272 Mich App 470, 473-474; 726 NW2d 746 (2006).

> This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses. Circumstantial evidence and reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime. All conflicts in the evidence must be resolved in favor of the prosecution. [*People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).]

"The elements of felony-firearm are that the defendant possessed a firearm during the commission or attempt to commit a felony." *People v Davis*, 216 Mich App 47, 53; 549 NW2d 1 (1996). The elements of felon in possession of a firearm are (1) the defendant was in possession of a firearm and (2) the defendant had previously been convicted of a specified felony. MCL 750.224f; see also *People v Perkins*, 262 Mich App 267, 269; 686 NW2d 237 (2004), abrogated on other grounds by *People v Smith-Anthony*, 494 Mich 669; 837 NW2d 415 (2013). Finally, "[t]he elements of felonious assault are: (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999).

> [F]elonious assault is a specific intent crime. Thus, felonious assault requires the additional showing that the defendant intended to injure or intended to put the victim in reasonable fear or apprehension of an immediate battery. The statute also requires the use of a dangerous weapon in carrying out the assault. [*People v Robinson*, 145 Mich App 562, 564; 378 NW2d 551 (1985) (quotations marks and citations omitted).]

-3-

Identity is an element of every crime. *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). On appeal, defendant argues that his identity as the person who had fired the gun was not established by sufficient evidence, and also that the evidence was insufficient to show that he had the necessary intent to injure Beauford and Fleming or put them in fear of an immediate battery.

There was sufficient evidence to conclude that defendant was the perpetrator of the felonious assaults on Beauford and Fleming. Fleming testified that he was certain of his identification of defendant as the person who walked behind the Jeep—the area where shots were fired—at the time of the shooting. Fleming described defendant's clothing during the shooting, which matched the clothing defendant was wearing when he was arrested shortly thereafter. Although defendant argues that it was dark outside and notes Fleming's age (mid-70s) as a reason to call the identification into question, Fleming testified that he was familiar with defendant, who he said was a frequent visitor of Kisha's. In any event, we will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses. *Kanaan*, 278 Mich App at 619.

The trial court could infer that defendant had a motive to fire the shots on behalf of Kisha, in light of evidence that she had argued with Fleming on Fleming's porch, issued what Fleming took as a threat to shoot him, and spoke with defendant shortly before the shooting took place. *People v Unger*, 278 Mich App 210, 223; 749 NW2d 272 (2008) ("[i]n cases in which the proofs are circumstantial, evidence of motive is particularly relevant"). Moreover, the record demonstrated that defendant was the only person with an opportunity to fire shots from behind the Jeep. Defendant claims that the evidence supports the finding that Kisha was actually the shooter, because she was involved in the earlier conflict with Fleming. As defendant notes, Fleming's testimony regarding Kisha's whereabouts during the shooting was at first somewhat confused. A careful review of the record, however, demonstrates that Fleming testified that, before the shooting, Kisha and defendant were both outside and initially both walked behind the Jeep. But according to Fleming, "[w]hen [he] heard the shots fired," Kisha was walking through her backyard and only defendant was behind the Jeep. Resolving all conflicts in evidence in favor of the prosecution, the evidence that defendant was the shooter was sufficient to support the element of identity. *Kanaan*, 278 Mich App at 619.

Defendant also argues that he could not have been the perpetrator because Fleming did not see him with a gun. But circumstantial evidence and reasonable inferences arising from that evidence can be used to establish the elements of a crime. *People v McRunels*, 237 Mich App 168, 181; 603 NW2d 95 (1999). The trial court could infer that a .45-caliber handgun was used during the shooting based on the .45-caliber shells recovered from the driveway. The record demonstrates that defendant had access to a .45-caliber gun, which was recovered from Kisha's closet in her home, where defendant was arrested after the shooting. Additionally, even though Fleming did not see defendant carrying a gun, the trial court could infer that defendant concealed or obtained a gun and used it to fire the shots from behind the Jeep.

Next, defendant argues that the prosecution failed to establish that he intended to injure or intended to put Beauford and Fleming in reasonable fear or apprehension of an immediate battery. "Intent, like any other fact, may be proven indirectly by inference from the conduct of the accused and surrounding circumstances from which it logically and reasonably follows."

*People v Lawton*, 196 Mich App 341, 349; 492 NW2d 810 (1002). Intent can be inferred from the use of a dangerous weapon or threats. See *People v Stevens*, 306 Mich App 620, 629; 858 NW2d 98 (2014). Further, because of the difficulty in proving an actor's state of mind, minimal circumstantial evidence of intent is sufficient. *Kanaan*, 278 Mich App at 622. Given the fact that defendant had some sort of relationship with Kisha and fired the shots almost immediately after the police left, the trial court could infer that defendant was carrying out her threats against Fleming. This inference was further bolstered by the fact that, as he walked toward the Jeep just before shots were fired, defendant expressed nonchalance about the possibility of being imprisoned. Further, both Fleming and Beauford were outside the home at the time the shots were fired; and Fleming's testimony that he told Beauford to protect her children supports the inference that both Fleming and Beauford could reasonably have feared an imminent battery. In sum, the trial court could have reasonably inferred that defendant fired the gun, even into the air, intending to injure or place Beauford and Fleming in fear and that Beauford and Fleming could have reasonably feared an imminent battery. See *Avant*, 235 Mich App at 505.

Viewing the record as a whole and resolving all conflicts in favor of the prosecution, there was sufficient evidence for the trial court to conclude that defendant was the perpetrator in possession of a gun and that he intended to injure the victims or put them in fear of an immediate battery.

### III. GREAT WEIGHT OF THE EVIDENCE

Defendant also argues that his convictions are against the great weight of the evidence, which he contends pointed toward Kisha's guilt. We disagree.

A new trial may be granted if a verdict is against the great weight of the evidence. MCR 2.611(A)(1)(e); *Domako v Rowe*, 184 Mich App 137, 144; 457 NW2d 107 (1990), aff'd 438 Mich 347 (1991). Such a motion should be granted only when the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result. *People v Lemmon*, 456 Mich 625, 639, 642; 576 NW2d 129 (1998); *Unger*, 278 Mich App at 232. Where a challenge to the great weight of the evidence follows a bench trial, this Court examines the trial court's findings for clear error, giving regard to the court's special opportunity to judge the credibility of witnesses. MCR 2.613(C); see *Phardel v State of Michigan*, 120 Mich App 806, 811; 328 NW2d 108 (1982).

As discussed previously, Kisha had a verbal altercation with Fleming and made threats; however, defendant also made statements to Fleming that could have been interpreted as a threat. The trial court found that only defendant, and not Kisha, was behind the Jeep when and from where the shots were fired. We do not find that evidence that Kisha may have also possessed a motive to fire the shots preponderates so heavily against the verdict that a new trial is required. *Lemmon*, 456 Mich at 639.

Defendant also argues that the verdict was against the great weight of the evidence because Holcomb testified that he was with defendant at the time of the shooting and that defendant did not possess or shoot a gun. Conflicting testimony does not render a verdict suspect; rather, a verdict may be overturned based on the lack of credibility of witnesses only under "exceptional circumstances" such as testimony that "contradicts indisputable facts or

laws" or "is so patently implausible it could not be believed by a reasonable juror" or is "seriously impeached" and the case is "marked by uncertainties and discrepancies." *Lemmon*, 456 Mich at 643-644, 647 (quotation marks and citations omitted). From the trial court's thorough recapitulation of the testimony presented at trial, it is clear that the court was aware of and considered the differences in the evidence before finding Fleming's testimony credible and therefore disregarding Holcomb's conflicting testimony, as was its prerogative. See MCR 2.613(C); *People v Sexton* (*On Remand*), 461 Mich 746, 752; 609 NW2d 822 (2000). Nor were any of the "exceptional circumstances" discussed in *Lemmon* implicated by Fleming's testimony. *Lemmon*, 456 Mich at 643-644, 647 (quotation marks and citations omitted). Thus, the evidence produced at trial did not preponderate so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. *Lemmon*, 456 Mich at 639. Accordingly, defendant is not entitled to a new trial.

## IV. PROSECUTORIAL ERROR[3]

Defendant argues that the prosecution committed error when arguing against a directed verdict and making statements in closing argument that were inconsistent with the record. We disagree.

Defendant did not object to the prosecution's conduct below. Accordingly, defendant's unpreserved claim of prosecutorial error is reviewed for plain error affecting substantial rights. *People v Abraham*, 256 Mich App 265, 274, 662 NW2d 836 (2003).

This Court examines a claim of prosecutorial error to determine whether a defendant was denied a fair and impartial trial. *Abraham*, 256 Mich App at 272. The prosecution is given latitude with regard to its arguments. *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995). "[Prosecutors] are free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Id*. The prosecution may use "hard language" or "[e]motional language" if the language does not interfere with the defendant's right to a fair trial and is supported by the evidence. *People v Ullah*, 216 Mich App 669, 678-679; 550 NW2d 568 (1996).

Defendant first objects to the prosecution's argument, in opposing his motion for a directed verdict, regarding the two incidents that had brought the police to Fleming's neighborhood on the night of the shooting. The prosecution stated:

---

[3] Although defendant refers to his claim on appeal as one of "prosecutorial misconduct," this Court held in *People v Cooper*, 309 Mich App 74, 87–88; 867 NW2d 452 (2015), that the term "prosecutorial error" is preferred over the more commonly used phrase of "prosecutorial misconduct," which should be reserved for only the most extreme cases when a prosecutor's conduct violates the rules of professional conduct or constitutes illegal conduct. See also *People v Bosca*, 310 Mich App 1, 25–26; 871 NW2d 307 (2015). As violation of the rules of professional conduct or illegal conduct is not at issue here, we therefore refer to defendant's claim as one of prosecutorial error.

The police came to the location two different times that day. Once because of the argument between [Beauford] and Miss Kisha. And the second time was after the shots were fired.

\* \* \*

Second, there was, it wasn't just a matter of Miss Kisha went home [after the altercation on the porch]. Somebody else came out and shot. There was a substantial amount of commentary between Mr. Fleming and Miss Kisha, and then Mr. Fleming and [defendant].

At some point there was a threat lodged against Mr. Fleming that was essentially, the quotation I believe was, I got something for you . . . And then it was after that point that the two shots were fired.

Defendant claims that the prosecution's argument suggested that defendant was involved in the initial incident on Fleming's porch. But reading the prosecution's argument in context, the prosecution never stated that defendant was present during that incident and in fact specifically stated that the argument was between Fleming and Kisha. Moreover, from the trial court's factual findings, the court clearly understood that the initial argument on the porch did not involve defendant.

Defendant also claims that the prosecution's argument attributed threats to defendant that he did not make. Defendant claims that the prosecution's reference to "a substantial amount of commentary between Mr. Fleming and Miss Kisha, and then Mr. Fleming and [defendant]" was inconsistent with the record because defendant only made one statement about being in the penitentiary. But the prosecution was referencing the statements made by both Kisha and defendant collectively. Considering both Kisha's statements that caused Fleming to fear that he would be shot, and defendant's statement demonstrating his nonchalance regarding incarceration, the prosecution's argument about a "substantial amount of commentary" was not erroneous. Moreover, defendant claims that the prosecution erroneously attributed Kisha's threat, "I got something for you," to defendant. But again, the prosecution argued that both Kisha and defendant made threats, and did not specify who made this particular threat. It was clear from the trial court's factual findings, however, that it understood that Kisha, not defendant, was responsible for this threat.

Defendant also argues that the prosecution mischaracterized the evidence regarding when Fleming saw defendant. The prosecution argued:

Miss Kisha then came back from across the street and said something to the effect, of I've got sixtteen [sic] for you. Or, I've got something for you.

Mr. Fleming indicated that he saw [defendant] outside on his porch across the street when that happened. He then indicated that Kisha, defendant's girlfriend, went back across the street. She and the defendant went into the house. The defendant came out of the house, went behind a car that was parked in the driveway and fired two shots at him while he was on the porch.

-7-

The record demonstrates that Fleming did not testify to seeing defendant when Kisha threatened the victims on the porch, but that Fleming saw Kisha join defendant across the street afterward. However, even if the prosecution mischaracterized when Fleming first saw defendant, the trial court did not rely on this mistake in rendering its verdict; in fact, it was clear that the trial court understood that the initial altercation was between Kisha and Fleming. Accordingly, any error did not affect defendant's substantial rights. *Abraham*, 256 Mich App at 274.

Defendant also argues that the prosecution made statements inconsistent with the record to the effect that defendant came out of the house with a gun after being with Kisha. Defendant claims that Fleming testified that defendant came from Kisha's front yard. However, the prosecution asked Fleming, "Where did he, did you see where he came out of?" Fleming responded, "He came out of the house." And when asked to specify which house, Fleming responded, "Miss Kisha [sic] house." Therefore, the prosecution did not err in describing the location from which defendant had come before ultimately going behind the Jeep.

Defendant further contends that the prosecution misrepresented evidence by arguing:

> It sounds like it wasn't a dispute that was over something important, but it sounded like it was a heated dispute. She goes across the street, comes back and tells Mr. Fleming, "I've got sixteen for you." The Court can infer what it wants. But that sounds like a reference to, I've got sixteen bullets for you. The handgun is brought out by [defendant] and it's shot at the direction of Mr. Fleming and the three kids on the porch.

Defendant claims this argument was prejudicial because Fleming did not actually see who fired the gun. But, as discussed previously, the trier of fact could infer that defendant was the shooter, and, again, the prosecution was free to argue all reasonable inferences from the evidence as it related to his theory of the case. *Bahoda*, 448 Mich at 282. Moreover, the trial court demonstrated no confusion regarding the testimony on this point. It cited Fleming's testimony that he did not see defendant with a gun, but nevertheless found that defendant was the shooter based on the location of the gunfire and defendant's presence behind the Jeep.

In the alternative, defendant argues that defense counsel was ineffective for failing to object to the prosecution's statements that he contends constituted prosecutorial error. We disagree. Defendant moved this Court for an evidentiary hearing regarding ineffective assistance of counsel, which motion was denied.[4] This Court's review of defendant's ineffective assistance claim is therefore limited to mistakes apparent on the record. *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). In *People v Gaines*, 306 Mich App 289, 300; 856 NW2d 222 (2014), this Court stated:

> Effective assistance of counsel is presumed, and defendant bears a heavy burden of proving otherwise. To demonstrate ineffective assistance, defendant

---

[4] *People v Duren*, unpublished order of the Court of Appeals, entered August 20, 2015 (Docket No. 324836).

must show: (1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that this performance so prejudiced him that he was deprived of a fair trial. "To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." [Citation omitted.]

Counsel is not ineffective for failing to raise meritless or futile objections. *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012). Because defendant cannot demonstrate prosecutorial error, defendant's claim that defense counsel was ineffective for not objecting to the claimed prosecutorial error is meritless.

Affirmed.


/s/ Mark T. Boonstra
/s/ Patrick M. Meter
/s/ Jane M. Beckering