*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHAD GREGORY,

        Plaintiff-Appellee,

v

SUZANNE GREGORY, individually and as trustee
of the S & S GREGORY TRUST,

        Defendant-Appellant,

and

STEPHEN GREGORY,

        Defendant.

UNPUBLISHED
December 22, 2022

No. 361101
Lapeer Circuit Court
LC No. 2021-055205-CH

Before: HOOD, P.J., and SWARTZLE and REDFORD, JJ.

PER CURIAM.

Defendant Suzanne Gregory individually and as trustee of S&S Gregory Trust appeals by right the trial court's order granting plaintiff, Chad Gregory, summary disposition and denying defendants' motion to file an amended answer and affirmative defenses. We affirm.

## I. FACTUAL BACKGROUND

On February 4, 2004, Kevin Cargill conveyed by warranty deed to Suzanne and Stephen Gregory,[1] her husband, property located at 131 Burnside Road, North Branch, Michigan. On February 5, 2004, Suzanne and Stephen obtained a loan in the amount of $104,000 from Providence Mortgage Company secured by a mortgage on their property located at 2335 Roods Lake Road, Lapeer, Michigan, the property at which Suzanne and Stephen resided. On or around January 1, 2010, Suzanne, Stephen, and plaintiff, their son, executed a land contract agreement

---

[1] Stephen is not a party to this action having died on August 11, 2017. The trial court dismissed the case as to Stephen only, on January 6, 2022.

-1-

that identified plaintiff as buyer and Suzanne and Stephen as sellers of land commonly known as 131 Burnside Road, North Branch, Michigan.  The land contract provided:

> **Chad Gregory** "Buyer" and **Stephen Gregory/Sue Gregory "Seller"** Agree to the following:
>
> 1.    **Property**, This agreement concerns the following Property:
> Property Tax I.D. # 44-006-009-039-00
> Which is commonly known as:
> 131 Burnside Rd.
> North Branch MI 48461
>
> 2.    **Payment Terms.**  Buyer shall make payment to Seller as follows:
>
> a.  Monthly Payments Of 443.85 Per Month Due the First day of each month until the total sum of $70,042.80 is reached.
>
> 3.    **Term of Contract.**  Payments shall be due beginning January 1st 2010 with a final balloon payment due on February 1st 2023, for a contract term of 157 months.
>
> **Duties and Obligations.**  The parties shall have the following duties and obligations:
>
> a.    **Maintenance of Property.**  The Buyer is responsible for all maintenance and repairs to the property.
>
> b.    **Property Taxes.**  Property taxes shall be the responsibility of The Buyer.
>
> c.    **Deed Transfer:**  Once final payment is made, Seller will transfer the deed into Buyers name.

The land contract agreement is dated January 1, 2010, and signed by Stephen Gregory as seller, Suzanne Gregory as seller, and Chad Gregory as buyer.

On September 24, 2021, plaintiff sent to Suzanne a letter stating:

According to my calculations, and the terms set forth in the land contract, dated 01/01/2010, for Property ID# 44-006-009-039-00, the amount of $70,042.80 has been met with this final payment of $640.61 Enclosed.

At this time I am requesting that the Deed be transferred into my name as agreed upon in the land contract terms as the conditions have been met in full.

On October 13, 2021, Marc Sackin, Suzanne's attorney, responded to plaintiff's September 24, 2021 letter by asserting that plaintiff misunderstood the legal terms of the land contract and that it required plaintiff to "satisfy the outstanding mortgage which is encumbering

the premises." Sackin stated further that "the amount owed on the Note for the mortgage encumbering the premises held by Mr. Cooper is in the amount of $57,485.61 with an interest rate of 2.875%." Sackin contended that the land contract could not be interpreted as intending that Suzanne would deed the property to plaintiff while she remained personally responsible for paying the referenced note. Sackin offered that Suzanne would deed plaintiff the premises when plaintiff paid the outstanding note in full but that Suzanne would make no further mortgage payments. Sackin suggested that plaintiff refinance or obtain a loan to pay off the note. In closing, Sackin stated: "Do not contact Ms. Gregory."

Suzanne's attorney's letter prompted plaintiff to file a complaint against Suzanne and Stephen, and the S&S Gregory Trust for which they were co-trustees, for specific performance of the land contract and to quiet title to the 131 Burnside Road property. Suzanne, in pro se, answered plaintiff's complaint with a somewhat free-flowing narrative. She disclosed that plaintiff was her son and described some of the family history. She stated that, in 2004, she and her husband Stephen borrowed money from a mortgage lender and purchased the Burnside Road property for plaintiff who had three children and a girlfriend needing housing. She explained that, in 2010, her payment of property taxes on two houses prompted the creation of the land contract. She admitted that plaintiff sent her a registered letter during October, but stated that it informed her that "he felt that he had fulfilled his obligation with the mortgage and wanted the deed to the property."[2] Suzanne asserted that plaintiff did not understand how payment of a mortgage required payment of principal and interest, stated that the mortgage balance equaled $56,526.49 with a current interest rate of 2.85%, and said that the mortgage was plaintiff's responsibility. Suzanne stated that she would execute a warranty deed to the property once plaintiff "secures a mortgage or makes a final balloon payment for balance due to the mortgage company[.]"

With her answer to plaintiff's complaint, Suzanne filed Stephen's death certificate and copies of the following: a recorded mortgage on her Roods Lake Road property;[3] an Adjustable Rate Rider that amended and supplemented the mortgage on her Roods Lake Road property; a Truth-In-Lending Disclosure (Real Estate) related to the mortgage loan transaction regarding the Roods Lake Road property; the Warranty Deed conveying title to the Burnside Road property to Suzanne and Stephen; the subject Land Contract Agreement related to the Burnside Road property; and plaintiff's September 24, 2021 letter. None of these documents indicates any contractual obligation of plaintiff to pay the referenced mortgage debt.

Suzanne also attached as an exhibit to her answer a three-page typed accounting statement that listed 112 payments made to Suzanne in various amounts from May 24, 2016 through September 24, 2021, and referenced 29 wage garnishment payments in the amount of $433.85, all totaling payments in the amount of $70,042.80. The document separately categorized the number

---

[2] Suzanne referred to the mortgage generally without any specific identifying information, but she attached a mortgage as an exhibit to her answer.

[3] The mortgage features the notarized signatures of Suzanne and Stephen, who are identified as the borrowers and mortgagors, and identifies the Rood Lake Road property as the security for a $104,000 loan from Providence Mortgage Company, the lender and mortgagee.

of payments in each amount with a column stating a declining balance to $0. The document has no title or indication of authorship.[4]

Plaintiff moved for summary disposition under MCR 2.116(C)(9) on the ground that Suzanne failed to state a valid defense to the claims made against her. Plaintiff described the terms of the land contract and asserted that he paid off the full amount of the land contract and then requested that defendant supply the deed, but Suzanne's attorney denied his request. Plaintiff pointed out that the mortgage that defendant attached to her answer applied to different land than the real property under land contract. He argued that nothing in the land contract required him to make payments on the mortgage and that the property under land contract was not subject to any mortgage. Plaintiff asserted that the land contract lacked ambiguity regarding the specified obligations and did not obligate him to assume or pay a mortgage on land different from the land sold by land contract. He argued that the parties' agreement was contained within the four corners of the land contract and defendant could not rely on matters outside of that contract. Plaintiff contended that defendant failed to respond to the claims stated in his complaint. He asserted that defendant did not dispute that the land contract existed, that he made payment on the land contract until paid in full, requested a deed, or that defendant refused to deed the property to him. Plaintiff argued that defendant breached the terms of the land contract which were in writing and clear on their face. Plaintiff asserted that defendant failed to state any valid defense and only raised irrelevant matters. Suzanne did not respond to plaintiff's motion.

Instead, on February 28, 2022, Suzanne filed a motion for leave to amend her answer and to file affirmative defenses. She contended that, when read together, the terms of the land contract's ¶ ¶ 2 and 3 made no sense. She asserted that plaintiff had the obligation to pay off her mortgage on her home but left such terms out of the land contract. She also contended that ¶ 2 should have had an interest provision. Suzanne offered her interpretation of the land contract and argued that her narrative answer to the complaint described the parties' agreement by stating "all the details left out by Plaintiff." She argued that she did not seek to contradict the land contract's terms but explain contemporaneous agreements or negotiations.

Plaintiff opposed Suzanne's motion. He explained that her interpretation of the land contract lacked merit because simple mathematical calculation demonstrated that the monthly payments required over 157 months would have left a balance of $358.35 to be paid as the balloon payment required under the contract to pay the amount in full. He denied plaintiff's assertions that he had any obligation to pay off Suzanne's mortgage and stated that nothing in the land contract even suggested that her assertions were true. Plaintiff argued that Suzanne's narrative answer to the allegations in the complaint failed to state any defense to the claims against her. He asserted that he paid the land contract in full with many payments in excess of the monthly required amount.

---

[4] The exhibits also featured copies of the following: Deerfield Township tax receipts; Acknowledgment of Cancellation Request for cancellation of insurance on the Burnside Road property; correspondence regarding the servicing of the mortgage loan on the Roods Lake Road property; documents addressed to Stephen pertaining to an unrelated loan account with ChoiceOne Bank; and notices and correspondence regarding a past due loan that were sent to Stephen during 2018 and 2019 by a representative of Lakestone Bank & Trust.

The trial court heard the parties' motions on March 14, 2022. After hearing the parties' respective arguments, the trial court granted plaintiff's motion and denied Suzanne's motion. This appeal followed.

## II. STANDARDS OF REVIEW

We review de novo a trial court's decision regarding a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). The trial court granted summary disposition to plaintiff pursuant to MCR 2.116(C)(9). Summary disposition may be granted under MCR 2.116(C)(9) when "[t]he opposing party has failed to state a valid defense to the claim asserted against him or her."

> Summary disposition under MCR 2.116(C)(9) is proper if a defendant fails to plead a valid defense to a claim. *Nicita v Detroit (After Remand)*, 216 Mich App 746, 750; 550 NW2d 269 (1996). A motion under MCR 2.116(C)(9) tests the sufficiency of a defendant's pleadings by accepting all well-pleaded allegations as true. *Lepp v Cheboygan Area Schools*, 190 Mich App 726, 730; 476 NW2d 506 (1991). If the defenses are " 'so clearly untenable as a matter of law that no factual development could possibly deny plaintiff's right to recovery,' " then summary disposition under this rule is proper. *Id*., quoting *Domako v Rowe*, 184 Mich App 137, 142; 457 NW2d 107 (1990).

> * * *

> Further, a court may look only to the parties' pleadings in deciding a motion under MCR 2.116(C)(9). MCR 2.116(G)(5). "Pleadings," as defined in MCR 2.110(A), include only a complaint, a cross-claim, a counterclaim, a third-party complaint, an answer to any of these, and a reply to an answer. [*Village of Dimondale v Grable*, 240 Mich App 553, 564-565; 618 NW2d 23 (2000).]

We review de novo whether contract terms are ambiguous. *Rossow v Brentwood Farms Dev, Inc*, 251 Mich App 652, 658; 651 NW2d 458 (2002). We review a trial court's decision to grant or deny a motion to amend a pleading for an abuse of discretion. *Long v Liquor Control Comm*, 322 Mich App 60, 67; 910 NW2d 674 (2017). A court abuses its discretion when it selects an outcome that falls outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

## III. ANALYSIS

Suzanne argues that the trial court erred by granting plaintiff summary disposition because the land contract was not fully integrated and its terms so unusual that ¶ ¶ 2 and 3 make no sense, such that, it should have been held ambiguous requiring the trial court to allow defendant to explain its meaning with parol evidence. We disagree.

The essential elements of a valid contract are: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation. *Hess v Cannon Twp*, 265 Mich App 582, 592; 696 NW2d 742 (2005). To form a valid contract, there must be a meeting of the minds on all the material terms. *Stanton v Dachille*, 186 Mich App

247, 256; 463 NW2d 479 (1990). "A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Id.* (quotation marks and citation omitted). "Meeting of the minds" is a figure of speech for mutual assent. *Goldman v Century Ins Co*, 354 Mich 528, 534; 93 NW2d 240 (1958).

"The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties; to this rule all others are subordinate." *Highfield Beach v Sanderson*, 331 Mich App 636, 654; 954 NW2d 231 (2020) (quotation marks, alterations, and citation omitted). "In ascertaining the meaning of a contract, we give the words used in the contract their plain and ordinary meaning that would be apparent to a reader of the instrument." *Id.* (quotation marks and citation omitted). Courts must "give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 468; 663 NW2d 447 (2003). "[U]nless a contract provision violates law or one of the traditional defenses to the enforceability of a contract applies, a court must construe and apply unambiguous contract provisions as written." *Rory v Continental Ins Co*, 473 Mich 457, 461; 703 NW2d 23 (2005). The legal principle that " 'unambiguous contracts are not open to judicial construction and must be enforced as written' " is "grounded in the rationale that the judiciary ought not interfere with the right of individuals to 'arrange their affairs via contract.' " *VHS Huron Valley Sinai Hosp v Sentinel Ins Co*, 322 Mich App 707, 716; 916 NW2d 218 (2018), quoting *Rory*, 473 Mich at 468. A provision is ambiguous only if it irreconcilably conflicts with another provision or it is equally susceptible to more than a single meaning. *Sau-Tuk Indus, Inc v Allegan Co*, 316 Mich App 122, 136; 892 NW2d 33 (2016). This Court will not distort a contract's plain language in such a way "to create an ambiguity where none exists." *UAW-GM v KSL Recreation Corp*, 228 Mich App 486, 491; 579 NW2d 411 (1998). Further, unless a contract contains an ambiguity, courts must apply the language as written without resort to extrinsic evidence of the parties' intentions. *Universal Underwriters Ins Co v Kneeland*, 464 Mich 491, 496; 628 NW2d 491 (2001).

Analysis of the land contract establishes that it lacks any ambiguity. No provision irreconcilably conflicts with another provision, nor is any provision equally susceptible to more than a single meaning. *Sau-Tuk Indus, Inc*, 316 Mich App at 136. The land contract plainly states that Stephen and Suzanne agreed to sell the Burnside Road property to plaintiff. Under ¶ 2, the parties mutually agreed that plaintiff would pay monthly payments of $443.85 on the first day of each month until he fully paid the contract price of $70,042.80. Paragraph 3 specified that plaintiff's payment obligation commenced on January 1, 2010, for a contract term of 157 months, with a final balloon payment due on February 1, 2023.

The terms of the land contract do not specify that plaintiff had to pay interest on the principal, nor did it provide for an early payoff penalty or restrict plaintiff from paying the contract price fully before it ultimately came due. The document also makes no reference to any other negotiations, transactions, or agreements between the parties contemporaneous with the formation and execution of the parties' land contract agreement.

Multiplication of the monthly payment amount times 157 months, the term of the contract, equals a total of $69,684.45, leaving an unpaid balance of $358.35. Under ¶ 3, that amount would have been the balloon payment due on February 1, 2023, had plaintiff paid his monthly payments through the full term of the land contract. The record indicates that plaintiff made a final payment

of $640.61 on September 24, 2021, in payment of the then remaining balance on the $70,042.80 contract price. When he made the final payment, plaintiff requested that Suzanne transfer the subject property to him by deed as required under the deed transfer provision in the land contract. She refused.

Plaintiff's complaint alleged that the parties entered the land contract attached to the complaint and he set forth allegations of the terms of the land contract, his fulfillment of the terms, plaintiff's breach of those terms, and his request for relief. Plaintiff stated a claim for specific performance of the terms of the land contract, the conveyance of the property by deed as required under the land contract, and stated a claim for the quieting of title to the subject property in himself.

Suzanne filed an answer to plaintiff's complaint in which she admitted the existence of the land contract and did not deny the terms set forth within the document. To her answer, Suzanne attached an accounting of the land contract payments made by plaintiff over time which indicated plaintiff's payment of the specified contract price in full. Although Suzanne complained of family discord throughout her answer and asserted that plaintiff made sporadic payments, she nowhere denied that he paid the full price as set forth in the land contract.

Plaintiff moved for summary disposition under MCR 2.116(C)(9) on the ground that Suzanne failed to state a valid defense. The record reflects that she failed in her answer to state any valid defense to plaintiff's claims. She did not deny the allegations set forth in plaintiff's complaint or state any response to the allegations that could reasonably be interpreted as stating a defense. Further, she failed to timely oppose plaintiff's motion. The record reflects that the trial court properly considered and analyzed Suzanne's answer and based upon the pleading determined that she failed to state a valid defense to plaintiff's claims. The record indicates that the trial court accepted as true her well-pleaded factual assertions in her answer and appropriately concluded that they failed to state a valid defense. The trial court did not err because her answer was "so clearly untenable that as a matter of law no factual development could possibly deny plaintiff's right to recovery." See *Slater v Ann Arbor Pub Sch Bd of Ed*, 250 Mich App 419, 425-426; 648 NW2d 205 (2002).

The trial court, therefore correctly ruled that Suzanne's answer failed to state a valid defense to plaintiff's claims. Her arguments to the contrary lack merit.

Suzanne also argues that the trial court erred by denying her an opportunity to amend her answer because she established that she had a defense to plaintiff's claim for specific performance. We disagree.

Under MCR 2.118(A)(2), a party may amend a pleading upon leave of the trial court; leave to amend a pleading "shall be freely given when justice so requires." *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 209; 920 NW2d 148 (2018). "[A] motion to amend should ordinarily be denied only for particularized reasons, including undue delay, bad faith or a dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or futility." *Id*. at 208 (quotation marks and citation omitted; alteration in original). A motion to amend a pleading is properly denied if the amendment would be futile. *Weymers v Khera*, 454 Mich 639, 658; 563 NW2d 647 (1997). "An amendment is futile if it merely restates the allegations already made or adds allegations that still fail to state

a claim." *Lane v KinderCare Learning Centers, Inc*, 231 Mich App 689, 697; 588 NW2d 715 (1998). Amendment of a pleading also is futile if it is legally insufficient on its face. *PT Today, Inc v Comm'r of Office of Fin and Ins Servs*, 270 Mich App 110, 143; 715 NW2d 398 (2006) (citations omitted). If further amendment of a pleading would be futile, summary disposition is appropriately granted. *Nowacki v State Employees' Retirement Sys*, 485 Mich 1037; 776 NW2d 911 (2010).

In this case, after the trial court determined that Suzanne failed to state a valid defense, it next correctly concluded that, because Suzanne failed to oppose plaintiff's motion brought under MCR 2.116(C)(9), MCR 2.116(I)(5) required the trial court to give her an opportunity to amend her answer "as provided under MCR 2.118 unless the evidence then before the court showed that amendment would not be justified." MCR 2.116(I)(5). Accordingly, the trial court considered Suzanne's motion to amend her answer and analyzed her proposed amended answer and affirmative defenses.

In her motion to amend, Suzanne argued for amending on the grounds that the terms of the land contract's ¶ ¶ 2 and 3 made no sense and were ambiguous, that ¶ 2 should have had an interest provision, and that ¶ 3 somehow meant something different than what it said because it called for fixed monthly payments and a balloon payment at the end of the payment term. She argued that the parol-evidence rule did not prohibit her from explaining the land contract's meaning and that the lack of an integration clause permitted her to rely on contemporaneous agreements or negotiations to explain the contract's terms including that it required plaintiff to pay off the mortgage on her separate property. Suzanne's arguments for amendment were without merit and her proposed amended pleading would present a futile defense.

The record reflects that the trial court analyzed the land contract and properly determined that it lacked ambiguity. The plain language of ¶ ¶ 2 and 3 were harmonious and did not conflict or permit the interpretation advocated by Suzanne. No provision irreconcilably conflicted with another provision, nor was any provision equally susceptible to more than a single meaning. *Sau-Tuk Indus, Inc*, 316 Mich App at 136. That alone established the futility of her amendment.

Moreover, the trial court correctly found no merit to Suzanne's argument that ¶ ¶ 2 and 3 were meaningless, ambiguous, or confusing requiring explanation. The trial court also correctly reviewed the evidence before it, including the documentation submitted by Suzanne herself which established that plaintiff paid the full purchase price required under the land contract before the payment term expired. The trial court properly concluded that no genuine dispute existed regarding the purchase price stated in the contract or the amount plaintiff paid, and that Suzanne's proposed answer failed to state a valid defense that could possibly defeat plaintiff's prima facie claims.

The record also reflects that the trial court considered Suzanne's proposed affirmative defenses to ascertain whether any provided a valid defense to plaintiff's claims. Suzanne sought to rely on the doctrine of laches or that the limitations period barred plaintiff's claim, neither of which had any applicability to this case. The trial court also considered whether Suzanne stated grounds for rescission or reformation of the land contract and correctly discerned that she failed to make any allegations that could possibly warrant such equitable relief. Further, the trial court correctly determined that Suzanne failed to allege facts to support application of the clean-hands

doctrine. The trial court also correctly decided that Suzanne could not evade her own liability for indisputably breaching the unambiguous terms of the land contract. Suzanne premised her motion on the contention that the land contract made no sense and harbored ambiguity, but the plain language of the land contract lacked ambiguity. Her arguments to the contrary lacked merit. The trial court, therefore, did not err by denying Suzanne's motion to amend her answer because doing so would have been futile.

Affirmed.

/s/ Noah P. Hood
/s/ Brock A. Swartzle
/s/ James Robert Redford