# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CARL RENE BRUNER II,

Defendant-Appellant.

UNPUBLISHED
October 11, 2016

No. 325730
Wayne Circuit Court
LC No. 14-008324-FC

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MICHAEL DEMOND LAWSON,

Defendant-Appellant.

No. 326542
Wayne Circuit Court
LC No. 14-005613-FC

Before: METER, P.J., and SHAPIRO and O'BRIEN, JJ.

PER CURIAM.

Defendants Carl Bruner II and Michael Lawson were tried jointly, before a single jury. The jury convicted Bruner of first-degree premeditated murder, MCL 750.316(1)(a); assault with intent to commit murder, MCL 750.83; felon in possession of a firearm, MCL 750.224f; and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The jury convicted Lawson of second-degree murder, MCL 750.317, and assault with intent to commit murder. The trial court sentenced Bruner as a fourth-offense habitual offender, MCL 769.12, to life in prison for the murder conviction, 37½ to 75 years for the assault conviction, and 40 months to 5 years for the felon-in-possession conviction, to be served concurrently, but consecutively to a two-year term of imprisonment for the felony-firearm conviction. The court sentenced Lawson as a fourth-offense habitual offender to 37½ to 75 years in prison for each conviction. Both defendants appeal as of right. We affirm defendants' convictions and affirm Bruner's sentences, but remand for further consideration of Lawson's sentences consistent with this opinion.

-1-

Defendants' convictions arose from the shooting of two security guards outside the Pandemonium nightclub in Detroit. One guard, Marcel Jackson, was fatally shot. Another guard, Wayne White, Jr., was struck in the back by a gunshot, but he was not injured because he was wearing a bulletproof vest. Witnesses testified that defendant Bruner was ejected from the nightclub for fighting. After he was ejected, he continued to behave erratically and threatened that he would return. Witnesses observed Bruner in the vicinity of the nightclub for approximately the next two hours. After the nightclub closed, Bruner was observed in the passenger seat of a gray Charger, driven by Lawson, which circled the block. At a certain point, the passenger's seat was empty. Lawson then exited the driver's seat while talking on a telephone. White and another guard looked around for Bruner. They heard the racking sound of a gun behind them and then gunfire erupted.

The prosecutor's theory at trial was that Bruner was the shooter and that he was aided or abetted by Lawson. Bruner's theory at trial was that he was not present and was misidentified. Lawson's theory was that he was present at the scene, but was not otherwise involved in the commission of the offenses.

## I. DOCKET NO. 325730 (DEFENDANT BRUNER)

## A. ADMISSION OF CODEFENDANT'S STATEMENTS

Bruner argues that his constitutional right to confrontation was violated when the trial court tried defendants together and admitted Lawson's statements to his friend, Westley Webb, against Lawson. We disagree. "Constitutional questions, such as those concerning the right to confront witnesses at trial, are reviewed de novo." *People v Pipes*, 475 Mich 267, 274; 715 NW2d 290 (2006).

In every criminal trial, the federal and state constitutions protect a defendant's right to be confronted with the witnesses against him. US Const, Am VI; Const 1963, art 1, § 20. "The Confrontation Clause of the Sixth Amendment bars the admission of 'testimonial' statements of a witness who did not appear at trial, unless the witness was unavailable to testify and the defendant had a prior opportunity to cross-examine the witness." *People v Walker* (*On Remand*), 273 Mich App 56, 60-61; 728 NW2d 902 (2006). " 'The right of confrontation insures that the witness testifies under oath at trial [and] is available for cross-examination, and allows the jury to observe the demeanor of the witnesses.' " *People v Watson*, 245 Mich App 572, 584; 629 NW2d 411 (2001), quoting *People v Frazier* (*After Remand*), 446 Mich 539, 543; 521 NW2d 291 (1994). A statement "is testimonial if the declarant should reasonably have expected the statement to be used in a prosecutorial manner and if the statement was made under circumstances that would cause an objective witness reasonably to believe that the statement would be available for use at a later trial." *People v Dendel* (*On Second Remand*), 289 Mich App 445, 453; 797 NW2d 645 (2010). On the other hand, statements are nontestimonial when they are "made informally to an acquaintance, not during a police interrogation or other formal proceeding . . . or under circumstances indicating that their 'primary purpose' was to 'establish or prove past events potentially relevant to later criminal prosecution[.]' " *People v Taylor*, 482 Mich 368, 378; 759 NW2d 361 (2008), quoting *Davis v Washington*, 547 US 813, 822; 126 S Ct 2266; 165 L Ed 2d 224 (2006).

In *Taylor*, 482 Mich at 377, the Michigan Supreme Court held that, "[w]hile nontestimonial statements are subject to traditional rules limiting the admissibility of hearsay, they do not implicate the Confrontation Clause." The statements in *Taylor* were nontestimonial because they were part of " 'a pattern of impugning communications' volunteered spontaneously and without reservation to a friend, not delivered to police, and 'without any apparent secondary motivation other than the desire to maintain the benefits of the relationship's confidence and trust—and according to the record, to brag.' " *Id*. at 380.

Shortly after the shooting here, Lawson and Webb, as they rode together in a car, discussed the circumstances leading to the police suspicion of Lawson.[1] There is no indication that any purpose of this conversation, let alone the primary purpose, was to "establish or prove past events potentially relevant to later criminal prosecution." *Id*. at 378, citing *Crawford v Washington*, 541 US 36, 68; 124 S Ct 1354; 158 L Ed 2d 177 (2004). Therefore, the Confrontation Clause was not implicated.

Bruner relies on *Bruton v United States*, 391 US 123, 137; 88 S Ct 1620; 20 L Ed 2d 476 (1968), in which the United State Supreme Court stated that "[d]espite the concededly clear instructions to the jury to disregard . . . hearsay evidence inculpating [the defendant], in the context of a joint trial we cannot accept limiting instructions as an adequate substitute for [the defendant's] constitutional right of cross-examination." *Bruton* involved the admission of a codefendant's custodial confession implicating the nontestifying defendant, which violated the defendant's constitutional right to confrontation. *Id*. at 127-128. Here, because Bruner has not established that there was a violation of the constitutional right to confrontation, the *Bruton* rule regarding limiting instructions is not applicable.

Bruner further argues that Lawson's statements were not admissible under MRE 804(b)(3), the hearsay exception for statements against the declarant's penal interest. Because this argument is not raised in the Statement of Questions Presented, it is not properly presented for appeal. MCR 7.212(C)(5); *People v Mackle*, 241 Mich App 583, 604 n 4; 617 NW2d 339 (2000). In any event, MRE 804(b)(3) does not have any relevance here, where the trial court expressly ruled that the evidence was not being admitted against Bruner. It was not necessary for the trial court to consider MRE 804(b)(3) to determine the admissibility of Lawson's statements against Lawson, because Lawson's out-of-court statements were independently admissible against him under MRE 801(d)(2)(A), as a party's own statement offered against that party. MRE 804(b)(3) would be relevant only if the statements were also being offered as substantive evidence against Bruner. Because Lawson's statements were admissible against him under MRE 801(d)(2)(A), and the statements were neither offered nor admitted against Bruner, it is not necessary to consider their admissibility under MRE 804(b)(3).

---

[1] Lawson referenced another individual, "Box," who was involved with him. The jury was instructed that this evidence could only be considered against Lawson, not Bruner. In addition, any reference to "Box" was substituted with the word "Blank."

-3-

## B. SUFFICIENCY OF THE EVIDENCE

Next, Bruner argues that there was inadequate proof that he was the perpetrator of the crimes. We disagree. A challenge to the sufficiency of the evidence in a jury trial is reviewed de novo, by reviewing the evidence in the light most favorable to the prosecution to determine whether the trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt. *People v Harverson*, 291 Mich App 171, 175-177; 804 NW2d 757 (2010). "All conflicts with regard to the evidence must be resolved in favor of the prosecution." *People v Wilkens*, 267 Mich App 728, 738; 705 NW2d 728 (2005).

"The elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). The elements of assault with intent to commit murder are: "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Warren* (*After Remand*), 200 Mich App 586, 588; 504 NW 2d 907 (1993). The pertinent elements of the crime of felon in possession of a firearm are that the defendant: (1) was in possession of a firearm and (2) had previously been convicted of a specified felony. MCL 750.224f(2). " 'The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony.' " *People v Taylor*, 275 Mich App 177, 179; 737 NW2d 790 (2007), quoting *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999).

Bruner does not argue that the evidence was insufficient to prove that the crimes were committed, but rather argues that the evidence was insufficient to identify him as the person who committed these crimes. Identity is an essential element of every crime that must be proven beyond a reasonable doubt. *People v Oliphant*, 399 Mich 472, 489; 250 NW2d 443 (1976); *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). Identity may be established by circumstantial evidence and reasonable inferences drawn from the evidence. See, generally, *People v Nelson*, 234 Mich App 454, 459; 594 NW2d 114 (1999).

The evidence demonstrates that Bruner was involved in a physical altercation around midnight, on the second floor of a nightclub, with another patron. Evidence indicates that Bruner punched a female patron twice with a closed fist. When security restrained him, Bruner was "[i]rate, agitated, [and] fighting the whole thing." He continued to fight security and act "[l]oud and crazy" as he was removed from the club. One security guard heard Bruner say, "I'll be back," in an aggressive tone, as he left. The security guard supervisor also observed Bruner "pointing like I'm going to get you . . . ." The security guard supervisor read Bruner's lips and interpreted them as Bruner saying, "[Y]ou are going to get yours." The jury could infer from Bruner's threats that he planned to retaliate against the guards.

Bruner returned to the club shortly afterward to get his keys. The jury could infer that he was still angry from the manager's testimony that he banged on the doors. The jury could also infer that Bruner was armed because he refused to allow security to search him for weapons. As a result, Bruner was not allowed back inside, but a guard found his keys and brought them outside to him. Even then, Bruner did not go home. Instead, he continued to watch the club from the sidewalk across the street for around two hours. Then, he returned to the club and

demanded his telephone. He had not calmed down, he still refused to allow security to search him for weapons, and he walked away without his telephone.

Bruner then returned to his post across the street, where he talked on another cellular telephone and was soon picked up by Lawson in a gray Charger. The pair then slowly circled the blocks surrounding the club between one and three times, eliciting the concern of the security guards who were outside the club. Evidence indicated that Bruner was not in the car on the last pass of the club. The jury could infer that Lawson dropped Bruner off before reaching the club, and then parked on the other side of the club by Sweetwater Tavern, drawing the guards' attention toward the Charger. The shooter then fired numerous shots toward the guards' backs as they ran for cover in the alley between the club and another building. The medical examiner's testimony, White's testimony, and the bulletproof vest that White was wearing demonstrated that both victims were struck from behind. As the prosecutor argued at trial, the jury could infer that Bruner waited until after closing, when everyone else was gone, to get a clear shot of the guards outside.

A woman Bruner had dated until the date of the shooting testified that, afterward, she did not hear from him for a year. Jackson's mother similarly testified that Bruner had communicated with her regularly before the shooting, but she never heard from him again afterward. He also failed to show up to a meeting with one of her other sons after Jackson's death was raised in a brief discussion between Bruner and the son. We note that evidence of a defendant's consciousness of guilt is relevant. *People v Schaw*, 288 Mich App 231, 237-238; 791 NW2d 743 (2010).

Given Bruner's motive and threats, the inference that he was armed and had an opportunity to shoot at the guards while they focused on Lawson and the Charger, and his behavior after the shooting, the jury could conclude beyond a reasonable doubt that Bruner was the shooter.[2] Viewed in the light most favorable to the prosecution, the evidence was sufficient evidence to establish that Bruner was the shooter.

## C. DEFENDANT BRUNER'S STANDARD 4 BRIEF

Defendant Bruner raises several claims of prosecutorial misconduct in a Standard 4 brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4. None of the claims were preserved with an appropriate objection at trial. Therefore, we review these claims for plain error affecting substantial rights. *People v Abraham*, 256 Mich App 265, 274; 662 NW2d 836 (2003); *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Relief is appropriate only if plain error affected the outcome of the proceedings. *Id*. In addition, "[r]eversal is warranted only when plain error resulted in the conviction of an actually innocent

---

[2] Although Bruner argues that the jury could not "put a firearm" in his hands without considering Webb's testimony, which was only admitted against Lawson, we again note that the jury could infer that Bruner was armed from the security guards' testimony that he repeatedly refused to be searched when he requested to return inside the club to retrieve his belongings.

defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings, independent of defendant's innocence." *People v Ackerman*, 257 Mich App 434, 448-449; 669 NW2d 818 (2003). Reversal is not required if a jury instruction could have cured any error. *Id*. at 449.

## 1. WEBB'S JAIL TIME

First, Bruner argues that the prosecutor committed misconduct by introducing Webb's testimony that he would serve jail time when he actually received three years' probation under a sentencing agreement. Webb did not receive the probationary sentence until after he testified at the preliminary examination. Webb's agreement with the prosecutor could have changed sometime between the preliminary examination and his sentencing hearing. The prosecutor was not able to elicit further testimony from Webb about the details of his agreement because he failed to appear at trial. At trial, however, the prosecutor stipulated to the admission of Webb's sentencing information, which allowed Lawson's attorney to argue that Webb lied to "get out of going to prison," and then failed to appear at trial to avoid further cross-examination. Thus, Bruner cannot establish that the prosecutor relied on false testimony. See *People v Lester*, 232 Mich App 262, 276-277; 591 NW2d 267 (1998), overruled in part on other grounds in *People v Chenault*, 495 Mich 142, 146; 845 NW2d 731 (2014) (a prosecutor may not knowingly use false testimony to obtain a conviction). Furthermore, Bruner cannot establish any effect on his substantial rights because this evidence was only admitted against Lawson and the jury is presumed to have followed its instructions not to consider it against Bruner. *People v Waclawski*, 286 Mich App 634, 674; 780 NW2d 321 (2009).

## 2. TELEPHONE CALL

Next, Bruner argues that the prosecutor committed misconduct by arguing that Lawson called Bruner after the shooting (in accordance with testimony by Webb) and reached Bruner on Bruner's cellular telephone. Bruner notes that his telephone was still in the club at the alleged time of this call. We first note that this argument is inapposite because the prosecutor was arguing Lawson's case at the time; any of Lawson's statements to Webb about this telephone call were not admitted against Bruner. At any rate, we note that the prosecutor did indeed argue in closing that there was a 39-second call from Lawson to the other perpetrator at 3:21 a.m., going to Bruner's telephone. Although Bruner implies that he could not have spoken with Lawson because his telephone was still in the club at the time of the call, other evidence demonstrated that Bruner was observed talking on a *different* telephone before the shooting. Therefore, even though it appears that Lawson did not actually reach Bruner *on the telephone later recovered in the club*, the jury could still infer that defendants were able to communicate after the shooting. On the record before us, we cannot find plain error that affected the outcome of the proceedings. Indeed, a curative instruction could have cured any error associated with the prosecutor's having referred to an incorrect telephone. *Ackerman*, 257 Mich App at 449.

## 3. CRIME SCENE

Also under the rubric of prosecutorial misconduct, Bruner argues that the crime scene was handled negligently and that the officer in charge inappropriately returned evidence to White. Bruner references testimony from the responding officers that there was a gun on the

ground by Jackson when they arrived at the scene but that it had disappeared by the time the evidence technicians arrived. He also makes note of testimony by the officer in charge that she returned White's 45-caliber magazines to him after determining that they had no evidentiary value in light of evidence that the shooting involved nine-millimeter casings. The prosecutor introduced this evidence at trial. It is unclear from Bruner's cursory argument what else the prosecutor could have done to protect his due process rights or how the treatment of the crime-scene evidence affected the outcome of the proceedings. Bruner's argument fails to establish plain error affecting his substantial rights.

## 4. ADDITIONAL CLAIMS

Bruner makes four additional claims that are unsupported by analyses or citations to the record. Specifically, he contends that (1) information was leaked to the media in order to procure a conviction and deny him a fair trial; (2) the prosecutor allowed the witnesses to compare, rehearse, and share testimony as well as "cajole and converse about their testimony before taking the witness stand;" (3) the prosecutor cited case law that had no relevant correlation to the case; and (4) the prosecutor misrepresented the availability of witnesses and lied to the court, indicating that an unnamed witness was unavailable. Because Bruner fails to cite any record evidence supporting these claims or adequately argue how they actually affected the trial, these portions of his argument are abandoned. See *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001 (holding that failure to brief a question on appeal is tantamount to abandoning it).

## II. DOOCKET NO. 326542 (DEFENDANT LAWSON)

## A. INEFFECTIVE ASSISTANCE OF COUNSEL

Lawson argues that his trial attorneys were ineffective for failing to file motions for severance. We disagree.

Whether Lawson was denied his right to the effective assistance of counsel presents a mixed question of fact and constitutional law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). The trial court's findings of fact, if any, are reviewed for clear error, and the constitutional issue of whether the facts constitute a violation of the right to the effective assistance of counsel is reviewed de novo. *Id*. As explained in *People v Gaines*, 306 Mich App 289, 300; 856 NW2d 222 (2014):

> Effective assistance of counsel is presumed, and defendant bears a heavy burden of proving otherwise. To demonstrate ineffective assistance, defendant must show: (1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that this performance so prejudiced him that he was deprived of a fair trial. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. [Citations and quotation marks omitted.]

"There is a strong policy favoring joint trials in the interest of justice, judicial economy, and administration, and a defendant does not have an absolute right to a separate trial." *People v*

*Etheridge*, 196 Mich App 43, 52; 492 NW2d 490 (1992). A trial court must sever the trial of codefendants on related offenses only when the defendant shows that "severance is necessary to avoid prejudice to substantial rights of the defendant." MCR 6.121(C); see also *Etheridge*, 196 Mich App at 53. To show that severance is necessary, a defendant must provide the court with a supporting affidavit, or make an offer of proof, "that clearly, affirmatively, and fully demonstrates that his substantial rights will be prejudiced and that severance is the necessary means of rectifying the potential prejudice." *People v Hana*, 447 Mich 325, 346; 524 NW2d 682 (1994); see also MCR 6.121(C). Such a showing is not made by codefendants' plans to present inconsistent defenses. *Hana*, 447 Mich at 349. The Supreme Court in *Hana* further explained:

> "It is natural that defendants accused of the same crime and tried together will attempt to escape conviction by pointing the finger at each other. Whenever this occurs the co-defendants are, to some extent, forced to defend against their co-defendant as well as the government. This situation results in the sort of compelling prejudice requiring reversal, however, only when the competing defenses are so antagonistic at their cores that both cannot be believed. Consequently, we hold that a defendant seeking severance based on antagonistic defenses must demonstrate that his or her defense is so antagonistic to the co-defendants that the defenses are mutually exclusive. Moreover, defenses are mutually exclusive within the meaning of this rule if the jury, in order to believe the core of the evidence offered on behalf of one defendant, must disbelieve the core of the evidence offered on behalf of the co-defendant." [*Id.* at 349-350, quoting *State v Kinkade*, 140 Ariz 91, 93; 680 P2d 801 (1984).]

The record on appeal does not demonstrate the prejudice required by MCR 6.121(C). Given that Bruner argued at trial that he was not present and was misidentified, and Lawson argued that he was merely present and did not assist the shooting, the defenses were not so antagonistic that they could not both be believed. *Hana*, 447 Mich at 349-350. Rather, in some ways, they were complementary. Lawson argued that Bruner was just an easy target for placing blame. Also, both defendants argued that others could have had motives to commit the crimes. Based on these strategies, Lawson's trial attorneys' decisions not to move for severance were not unreasonable because severance was not necessary and the motion would not have been successful. *People v Goodin*, 257 Mich App 425, 433; 668 NW2d 392 (2003) (defense counsel is not ineffective for failing to make a futile motion or argument).

Lawson argues that if his attorneys had moved for severance, he would have been allowed to argue that Bruner was the shooter. As the prosecutor argues, however, by failing to point his finger solely at Bruner, Lawson could argue both: (1) that nobody identified the shooter and (2) that even if the jury concluded that Bruner was involved, there was still no proof that Lawson rendered aid to him. Thus, there was also a strategic justification against moving for severance on this basis.

Finally, Lawson cannot establish that but for his attorneys' failures to move for severance, the outcome of the trial would have been different. The jury is presumed to have followed its instructions that each defendant should be considered separately. See *Waclawski*, 286 Mich App at 674. Moreover, regardless of whether the cases were tried together or separately, the evidence establishing that Lawson aided the shooter would have still been

admissible. Had the trials been separate and Lawson had argued that "Blank," Bruner, and the shooter were the same person, Lawson would have only removed any question of fact regarding the identity of the shooter. Because Lawson cannot establish that severance would have resulted in a different outcome, he cannot establish that his attorneys were ineffective in failing to move for separate juries.

## B. ADMISSIBILITY OF WEBB'S PRELIMINARY EXAMINATION TESTIMONY

Lawson also argues that his constitutional right to confront witnesses was violated when the trial court found that Webb was unavailable and admitted his preliminary examination testimony. We disagree.

Lawson's challenge to the admission of evidence is reviewed for an abuse of discretion, *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014), but any questions of constitutional law are reviewed de novo, *Gaines*, 306 Mich App at 304. Whether the prosecution exercised due diligence to produce a witness depends on the facts of each case. *People v Bean*, 457 Mich 677, 684; 580 NW2d 390 (1998). This Court reviews the trial court's findings of fact for clear error. *People v Lawton*, 196 Mich App 341, 348; 492 NW2d 810 (1992). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Lanzo Constr Co*, 272 Mich App 470, 473; 726 NW2d 746 (2006). Unpreserved claims are reviewed for plain error affecting substantial rights. See *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

As discussed earlier, in every criminal trial, the federal and state constitutions protect a defendant's right to be confronted with the witnesses against him. US Const, Am VI; Const 1963, art 1, § 20; *People v Garland*, 286 Mich App 1, 10; 777 NW2d 732 (2009). The opportunity to meet one's accuser face-to-face is an important, but not indispensable, element of a defendant's confrontation right. *Maryland v Craig*, 497 US 836, 844; 110 S Ct 3157; 111 L Ed 2d 666 (1990). Face-to-face confrontation "must occasionally give way to considerations of public policy and the necessities of the case[.]" *Id*. at 849 (citation and quotation marks omitted). Consequently, the "Sixth Amendment bars testimonial statements by a witness who does not appear at trial unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness." *Yost*, 278 Mich App at 370. Statements made during a former trial are testimonial and implicate the Confrontation Clause. See *Crawford*, 541 US at 68. Because Webb's testimony at the preliminary examination was testimonial, for that testimony to be admissible at trial, the Sixth Amendment required: (1) that Webb was "unavailable" and (2) that there was a prior opportunity for cross-examination.

Pursuant to MRE 804(a)(5), a witness is unavailable if he is absent from the hearing and the proponent of his statement has been unable to procure his attendance, notwithstanding the exercise of due diligence. MRE 804(a)(5). Due diligence is the attempt to do everything that is reasonable, not everything that is possible, to obtain the presence of a witness. See *People v Cummings*, 171 Mich App 577, 585; 430 NW2d 790 (1988). The focus is on whether diligent, good-faith efforts were made to procure the testimony and not on whether more stringent efforts would have produced it. *Bean*, 457 Mich at 684.

If a witness is "unavailable," a party may avoid the hearsay rule and proffer "[t]estimony given as a witness at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." MRE 804(b)(1). "Whether a party had a similar motive to develop the testimony depends on the similarity of the issues for which the testimony was presented at each proceeding." *People v Farquharson*, 274 Mich App 268, 275; 731 NW2d 797 (2007). Factors considered in evaluating similarity are:

> (1) whether the party opposing the testimony had at a prior proceeding an interest of substantially similar intensity to prove (or disprove) the same side of a substantially similar issue; (2) the nature of the two proceedings—both what is at stake and the applicable burden of proof; and (3) whether the party opposing the testimony in fact undertook to cross-examine the witness (both the employed and available but forgone opportunities). [*Id*. at 278 (citation and quotation marks omitted).]

At the outset, Lawson challenges, in passing, the prosecutor's offer of proof regarding Webb's unavailability. This challenge is not part of his Statement of Questions Presented and he cites no authority for the proposition that more proof than the prosecutor's statements about the efforts to locate Webb was required. Because Lawson has failed to adequately present and discuss his argument, or cite supporting authority, his argument has been abandoned. MCR 7.212(C)(5); MCR 7.212(C)(7); *Kevorkian*, 248 Mich App at 389. Moreover, the prosecutor was precluded by the rules of professional conduct from knowingly making a false statement to the court, MRPC 3.3(a)(1), and Lawson has not offered any evidence that the prosecutor's statements on the record were false. Therefore, Lawson cannot establish that the trial court's reliance on the prosecutor's statements affected his substantial rights.

Lawson next argues that the prosecutor failed to exercise due diligence because his efforts to locate Webb were insufficient. When the prosecutor informed the trial court that Webb was missing, he explained on the record that he had been looking for Webb for several weeks. The officer in charge went to Webb's address and sent other officers there with no success. The prosecutor contacted Webb's probation officer, whom Webb had visited within two weeks; Webb's address and telephone number were confirmed. However, when the prosecutor called Webb's telephone, there was no answer and the calls went to voicemail. Webb was known to have some health problems, but the officer in charge could not find him in any hospitals. The prosecutor also requested a witness detainer for Webb and stated that it "has not been successful either." Although Lawson complains that the government did not investigate Webb's mail delivery, utilities billing, jail records, or relationships with friends and family, the focus is whether good-faith efforts were made and not whether more stringent efforts would have produced the witness. *Bean*, 457 Mich at 684. The trial court did not clearly err by concluding that Webb was unavailable.

To the extent that Lawson also maintains that the admission of this former testimony violated his right to confrontation, his argument is without merit. Again, the use of former testimony does not violate a defendant's right to confrontation provided that the witness is unavailable to testify at trial and the defendant had a prior opportunity to cross-examine the witness. *Yost*, 278 Mich App at 370; *People v Bennett*, 290 Mich App 465, 481; 802 NW2d 627

(2010). In this case, as discussed, Webb was unavailable to testify at trial. Moreover, Lawson had an opportunity to cross-examine him at the previous preliminary examination. See *United States v Owens*, 484 US 554, 559; 108 S Ct 838, 842; 98 L Ed 2d 951 (1988) ("the Confrontation Clause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish" (citations, quotation marks, and emphasis omitted)).

The motives for conducting a preliminary examination and trial are strongly similar—to establish a crime has been committed and a defendant committed the crime. See, generally, *People v Johnson*, 427 Mich 98, 104; 398 NW2d 219 (1986). Although the burden of proof at the preliminary examination was lower than that at trial, Lawson still had a similar motive to cross-examine the witnesses against him. At the preliminary examination, defense counsel (albeit a different attorney than the attorney who represented Lawson at trial) elicited testimony from Webb about his ongoing case involving theft or dishonesty; that Lawson never said he got thrown out of the club, shot anyone, had a gun, or knew that Blank was going to shoot someone; and that Lawson did not say whether he was upset about Blank's being removed from the club. Defense counsel also elicited testimony that Webb disagreed with the portion of his written statement that said Blank left and returned with a gun. In sum, because Webb was unavailable for trial and Lawson had a prior opportunity for effective cross-examination, the admission of the former testimony at trial did not violate Lawson's right to confrontation. *Yost*, 278 Mich App at 370.

Lawson argues that he was prejudiced because the trial court did not provide the missing witness instruction under CJI2d 5.12, which provides, "_____ is a missing witness whose appearance was the responsibility of the prosecution. You may infer that this witness's testimony would have been unfavorable to the prosecution's case." This instruction is only given when due diligence to produce a witness was not exercised. *People v Eccles*, 260 Mich App 379, 388; 677 NW2d 76 (2004). Because the trial court did not clearly err in finding that Webb could not be produced for trial despite the exercise of due diligence, the court did not err in failing to provide the instruction.

## C. SUFFICIENCY OF THE EVIDENCE

Lawson also argues that the prosecutor failed to offer sufficient evidence that he aided and abetted Bruner. He maintains that, at most, he was merely present with Bruner before the shooting. We disagree.

"The elements of second-degree murder are: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse." *People v Goecke*, 457 Mich 442, 463-464; 579 NW2d 868 (1998). Again, the elements of assault with intent to commit murder are: "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *Warren*, 200 Mich App at 588.

The elements necessary to convict a defendant under an aiding and abetting theory are:

(1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission

-11-

of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement. [*People v Plunkett*, 485 Mich 50, 61; 780 NW2d 280 (2010) (citations and quotation marks omitted).]

"An aider and abettor's state of mind may be inferred from all the facts and circumstances." *Carines*, 460 Mich at 758 (citation and quotation marks omitted). "Factors that may be considered include a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime." *Id.* (citations and quotation marks omitted).

There was sufficient evidence that Lawson aided and abetted Bruner to support his convictions of second-degree murder and assault with intent to commit murder. According to Webb, Lawson knew that Blank had been removed from the club and "roughed . . . up" by the security guards. Lawson also told Webb that Blank owned the Charger that he drove. Given the consistencies between these facts and Bruner's circumstances on the night of the shooting, the jury could infer that Blank and Bruner were the same person.

The jury could infer that, because Bruner was angry and agitated during the hours following his removal, and Lawson and Bruner interacted during that period, Lawson was aware of Bruner's agitated state. Lawson told Webb that they had a gun in the car. The jury could infer that, by circling the neighborhood around the club after the club closed, Lawson helped Bruner determine when the club's patrons had left and his targets—the security guards—remained. The prosecutor also argued to the jury that, by dropping Bruner off before parking in front of Sweetwater Tavern, Lawson created a diversion, drew the guards' attention toward him, and allowed Bruner to fire shots at their backs. Finally, the jury could infer that Lawson knew about Bruner's plan to shoot because he telephoned Bruner after the shooting and discussed Bruner's plans for departure; Webb stated that Lawson "said that Blank told him he had a ride. He you know he [sic] was going to get a ride and he said he left." Viewing all of these facts in a light most favorable to the prosecutor, the jury could have found beyond a reasonable doubt that Lawson aided and abetted Bruner.

## D. GREAT WEIGHT OF THE EVIDENCE

Lawson also argues that the jury's verdict was against the great weight of the evidence. We disagree.

A new trial may be granted if a verdict is against the great weight of the evidence. MCR 2.611(A)(1)(e); *Domako v Rowe*, 184 Mich App 137, 144; 457 NW2d 107 (1990). A motion on this basis should be granted only when the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result. *People v Lemmon*, 456 Mich 625, 639-640, 642; 576 NW2d 129 (1998); *People v Unger*, 278 Mich App 210, 232; 749 NW2d 272 (2008). In *People v Musser*, 259 Mich App 215, 219; 673 NW2d 800 (2003), this Court explained:

Conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial. [U]nless it can be said that directly contradictory

-12-

testimony was so far impeached that it was deprived of all probative value or that the jury could not believe it, or contradicted indisputable physical facts or defied physical realities, the trial court must defer to the jury's determination. [Citations and quotation marks omitted.]

Lawson combines his sufficiency and great weight arguments, and he does not offer any additional support for his position that the jury's verdict was against the great weight of the evidence. Although he argues that the "versions of the incident varied among the witnesses," he does not argue that testimony contradicted indisputable physical facts or defied physical realities, or that it was so far impeached that it was deprived of all probative value. As previously explained, the evidence was sufficient to support the jury's verdict. In addition, the verdict cannot be said to be against the great weight of the evidence. The trial court did not abuse its discretion by denying Lawson's motion for a new trial based on the great weight of the evidence.

## E. SENTENCING

Lawson argues that this Court should remand for resentencing because the trial court improperly scored offense variable (OV) 5 based on facts that were not admitted by Lawson or found by a jury beyond a reasonable doubt. We agree that remand for further proceedings is appropriate in light of *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015).

At sentencing, the trial court scored the guidelines for Lawson's conviction of second-degree murder, resulting in a guidelines range of 315 to 1050 months, or life. Lawson now argues that OV 5 was improperly scored on the basis of facts not admitted by Lawson or found by a jury beyond a reasonable doubt. Because Lawson did not object on this basis at sentencing, this issue is unpreserved and our review is for plain error affecting Lawson's substantial rights. *Lockridge*, 498 Mich at 392-393.

In *Lockridge*, *id*. at 364, the Michigan Supreme Court held that Michigan's sentencing guidelines are unconstitutional to the extent that they require judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables that mandatorily increase the floor of the guidelines minimum sentence range. When a judge makes findings of fact beyond facts admitted by the defendant or found by the jury in a sentencing proceeding that mandatorily increases a defendant's minimum sentence, this runs afoul of a defendant's Sixth Amendment right to a jury trial. *Id*. The Court held that in order to avoid any Sixth Amendment violation, Michigan's sentencing guidelines are to be deemed advisory, instead of mandatory. *Id*. at 391. Sentencing judges must continue to consult the guidelines and take them into account. *Id*.

Lawson was sentenced before *Lockridge* was decided. In determining whether there is any plain error entitling Lawson to relief under *Lockridge*, the first inquiry is whether the facts admitted by the defendant and the facts necessarily found by the jury "were sufficient to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he or she was sentenced." *Id*. at 394. If the answer is "yes," then a

defendant cannot establish any plain error. *Id*. at 394-395. If the answer is "no," then a remand to the trial court for a *Crosby*[3] proceeding is required. *Id*. at 395-397.

Lawson argues that he did not admit, and the jury did not find beyond a reasonable doubt, that "[s]erious psychological injury requiring professional treatment occurred to a victim's family[.]" MCL 777.35. The elements of second-degree murder and assault with intent to commit murder do not require a jury to make any findings regarding psychological injury to a victim's family. Therefore, it was necessary to resort to judicial fact-finding to score OV 5. Absent judicial fact-finding, Lawson's OV 5 score would be zero points and would result in a reduced guidelines range of 275 to 900 months. In light of this change, Lawson has made a sufficient showing of plain error to justify remanding this case to the trial court to allow it to determine whether, now aware of the advisory nature of the guidelines, it would have imposed materially different sentences. On remand, the trial court shall follow the procedure described in part VI of the Supreme Court's opinion in *Lockridge*.[4]

We affirm defendants' convictions and affirm Bruner's sentences, but remand for further consideration of Lawson's sentences consistent with this opinion. We do not retain jurisdiction.

/s/ Patrick M. Meter
/s/ Colleen A. O'Brien

---

[3] *United States v Crosby*, 397 F3d 103 (CA 2, 2005).

[4] We acknowledge, in light of some of the court's statements at sentencing, that it is unlikely that the sentences will be changed on remand; nevertheless, a remand is appropriate under *Lockridge*.