*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

SHAUN MICHAEL WHEELER,

Defendant-Appellant.

UNPUBLISHED
July 16, 2020

No. 347138
Oakland Circuit Court
LC No. 2018-266614-FC

Before: RIORDAN, P.J., and SHAPIRO and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant appeals his jury trial convictions of first-degree premeditated murder, MCL 750.316(1)(a), and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to life in prison for the murder conviction and two years in prison for the felony-firearm conviction. We affirm.

Defendant's convictions arise from the shooting death of his wife, Cory Ehlers, at the family's home in Rochester, Michigan, on March 12, 2018. Defendant confessed shortly after the shooting and has never disputed that he fired two shots at his wife, the second of which was fatal.

The shooting occurred shortly after Cory returned home after visiting a law office to sign a divorce complaint. Defendant and Cory argued about the impending divorce, including issues of child custody. Defendant then went to the home's garage and obtained a loaded handgun, which he concealed in his coat pocket. When he returned to the home, the couple resumed their argument. Defendant then shot Cory twice. The first shot grazed her left ear. Defendant then shot her a second time in the back of her head, killing her. Defendant went to a police station later that day and admitted killing his wife. The defense theory at trial was that defendant shot Cory suddenly without thought or reflection and was therefore guilty of voluntary manslaughter rather than first-degree premeditated murder.

## I. VERDICT FORM

Defendant first argues that he is entitled to a new trial because the verdict form allowed the jury to consider second-degree murder and voluntary manslaughter as lesser offenses of first-

-1-

degree murder, but it did not give the jury the option of finding him not guilty of the lesser offenses.[1]

A verdict form is considered part of the jury instructions. See *People v Garcia*, 448 Mich 442, 483-484; 531 NW2d 683 (1995). "Challenges to jury instructions are considered in their entirety to determine whether the trial court committed error requiring reversal." *People v Eisen*, 296 Mich App 330, 329; 820 NW2d 229 (2012) (quotation marks citation and omitted). "[A]n imperfect instruction is not grounds for setting aside a conviction if the instruction fairly presented the issues to be tried and adequately protected the defendant's rights." *People v Kowalski*, 489 Mich 488, 501-502; 803 NW2d 200 (2011).

Defendant argues that the jury verdict form used in this case is similar to the form that was found to be improper in *People v Wade*, 283 Mich App 462, 465; 771 NW2d 447 (2009). The defendant in *Wade* was charged with first-degree premeditated murder following a victim's death by shooting. *Id.* at 463-464. The defense argued that the shooting was unintentional and the defendant only intended to fire a "warning shot." *Id*. at 464. Given this defense, the trial court instructed the jury regarding the lesser offenses of second-degree murder and involuntary manslaughter. *Id*. at 465. The defendant was convicted of involuntary manslaughter per the following jury verdict form:

POSSIBLE VERDICTS

YOU MAY RETURN ONLY ONE VERDICT FOR EACH COUNT.

COUNT 1-HOMICIDE-MURDER FIRST DEGREE-PREMEDITATED (EDWARD BROWDER, JR)

__ NOT GUILTY

__ GUILTY

OR

__ GUILTY OF THE LESSER OFFENSE OF-HOMICIDE-MURDER SECOND DEGREE (EDWARD BROWDER, JR.)

OR

---

[1] Because defendant did not object to the jury verdict form at trial, this issue is unpreserved. Therefore, our review is plain error affecting defendant's substantial rights. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). An error is plain if it is clear or obvious, and an error affects substantial rights if it is prejudicial, i.e., if it affects the outcome of the proceedings. *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003).

___ GUILTY OF THE LESSER OFFENSE OF INVOLUNTARY MANSLAUGHTER-FIREARM INTENTIONALLY AIMED (EDWARD BROWDER, JR.)

COUNT 2-WEAPONS-FELONY FIREARM

___ GUILTY

___ NOT GUILTY [*Id.*]

In *Wade*, the trial court instructed the jury about the verdict form as follows:

You understand keenly in the verdict form, as to Count 1, the defendant, Mr. Wade, is charged with . . . Homicide, Murder in the First Degree, Premeditated.

You can either-this is what this instruction is, either Not Guilty or Guilty or you can then consider the lesser offense of . . . Homicide Murder in the Second Degree, if you find the evidence supports that.

If you don't find the evidence supports that and you want to consider the lesser offense, you may go on down to-you may consider the Involuntary Manslaughter, okay. That is-those are your options.

You're only going to check one box. Okay. [*Id.*]

This Court held that the jury verdict form was defective, stating:

Here, we likewise conclude that the verdict form was defective, requiring reversal, because it did not give the jury the opportunity to return a general verdict of not guilty. We note that the verdict form would not have been defective if it had included a box through which the jury could have found defendant not guilty of second-degree murder and not guilty of involuntary manslaughter. Despite the trial court's efforts to clarify the verdict form with its instructions, because of the way the verdict form was set up, the jury was not given the opportunity to find defendant either generally not guilty or not guilty of the lesser-included offenses such that his constitutional right to a trial by jury was violated. Accordingly, we reverse defendant's conviction and remand this case for a new trial. [*Id.* at 468.]

In this case, the verdict form provided:

VERDICT FORM

You may return only one verdict on each count. Mark only one box for each count on this sheet.

Count 1: Homicide – First Degree Premeditated Murder

☐ Not Guilty

☐ Guilty

Guilty of the Lesser Offense of:

☐ Homicide-Second Degree Murder

☐ Voluntary Manslaughter

Count 2: Felony Firearm

☐ Not Guilty

☐ Guilty

The parties agree this verdict form is substantially similar to the form prescribed in the Model Criminal Jury Instructions. See M Crim JI 3.26.

This case is distinguishable from *Wade* for two reasons. First, unlike the verdict form in *Wade,* in which the word "or" separated the charged crime and the lesser offenses, the verdict form here contains no such separation. The use of "or" is significant because it suggests that if the jury decides to move on from the charged crime, it must choose the guilty option for the lesser included offense. In other words, the use of the word "or" in the verdict form in *Wade* signaled that the jury had only three options—(1) either guilty or not guilty of first-degree murder; *or* (2) guilty of second-degree murder; *or* (3) guilty of involuntary manslaughter—without providing the jury with the opportunity to find defendant not guilty of the lesser offenses. In contrast, the verdict form in this case allowed the jury to choose between the following four options: not guilty, guilty of first-degree premeditated murder, guilty of second-degree murder, or guilty of voluntary manslaughter.

The trial court's jury instructions also distinguish this case from *Wade.* In *Wade*, the trial court did not clearly instruct the jury that it could find the defendant not guilty of the lesser offenses. By contrast, the trial court here instructed, "you may find the Defendant guilty of all or any one of these crimes, guilty of a less serious crime, or not guilty." Also, in its instructions regarding the sequence in which the jury should consider the first-degree premeditated murder charge and the lesser offenses, the court again informed the jury that it could find defendant not guilty of second-degree murder. The instructions "fairly presented the issues to be tried," *People v Kowalski*, 489 Mich 488, 501-502; 803 NW2d 200 (2011), and the jury is presumed to have followed its instructions, *People v Unger*, 278 Mich App 210, 237; 749 NW2d 272 (2008).

Further, to the extent that the jury may have been confused whether it had the option of finding defendant not guilty of a lesser offense, the error did not affect defendant's substantial rights because the jury in this case convicted defendant of the highest offense—first-degree premeditated murder—and it is undisputed that the verdict form gave the jury the option of selecting guilty or not guilty for this offense. Therefore, we reject this claim of error.

In a related argument, defendant argues that defense counsel was ineffective for failing to object on the record to the verdict form. To establish ineffective assistance of counsel, a defendant must show: (1) that counsel's performance was below an objective standard of reasonableness

under prevailing professional norms, and (2) that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been different. *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 US at 694.

Defendant cannot establish that failure to object to the verdict form fell below an objective standard of reasonableness. As discussed earlier, the verdict form closely resembles the model verdict form and the jury had the choice between finding defendant not guilty, guilty of first-degree premeditated murder, guilty of second-degree murder, or guilty of voluntary manslaughter. Defense counsel was not ineffective for failing to object to an instruction that fairly presented the applicable law and sufficiently protected defendant's rights. *People v Clark*, 274 Mich App 248, 257; 732 NW2d 605 (2007). In addition, defendant fails to establish prejudice from counsel's decision not to object because the jury convicted defendant of first-degree premediated murder rather than a lesser-included offense.

## II. PROSECUTORIAL MISCONDUCT

Defendant cites numerous passages from the prosecutor's closing argument to argue that the prosecutor committed misconduct. Specifically, defendant claims that the prosecutor improperly appealed to the sympathy of the jury by: (1) asking the jury to imagine what Cory thought and felt when she was shot, (2) urging the jury to return a first-degree premeditated murder verdict to bring justice to the family, and (3) repeatedly naming those who lost Cory and asking the jury to consider the losses they suffered.[2]

"Given that a prosecutor's role and responsibility is to seek justice and not merely convict, the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "Prosecutorial comments must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial." *People v Brown*, 279 Mich App 116, 135; 755 NW2d 664 (2008). Prosecutors are given latitude with regard to their arguments. *People v Bahoda,* 448 Mich 261, 282; 531 NW2d 659 (1995). "They are free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Id.* But "[a] prosecutor may not appeal to the jury to sympathize with the victim. Nor may a prosecutor urge the jury to convict as part of its civic duty or on the basis of its prejudices." *Unger*, 278 Mich App at 237 (citation omitted).

Defendant first claims that the prosecutor improperly made comments as to what Cory thought at the time of her death. The prosecutor argued that after the first shot Cory was probably screaming, crying, and questioning whether she would ever see her children again. In addition, the prosecutor suggested that the jury could imagine the shock, terror, and horror that Cory experienced. Although there was no evidence as to how Cory reacted to the first shot, the

---

[2] Because defendant did not object to the prosecutor's remarks at trial, these claims are unpreserved. *People v Abraham,* 256 Mich App 265, 279; 662 NW2d 836 (2003). Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting substantial rights. *People v Vandenberg*, 307 Mich App 57, 61; 859 NW2d 229 (2014).

prosecutor's comments were reasonable inferences and relevant to the issue of intent and premeditation. Considering the wide latitude afforded to prosecutors, these comments were not improper.

Defendant also takes issue with the prosecutor's comments urging the jury to return a first-degree premeditated murder verdict to bring "justice" to the family. In *People v Lane*, 308 Mich App 38, 62; 862 NW2d 446 (2014), the prosecutor requested that the jury "stand up for justice" for the victim. This Court concluded that the request was not prosecutorial misconduct because

> [t]he prosecutor did not urge the jury to suspend its powers of judgment and find [the defendant] guilty on the basis of civic duty or sympathy. Rather, the prosecutor urged the jury to find [the defendant] guilty on the basis of the evidence and its sense of judgment, and, as a result, [the victim] would have justice. *Id.* at 66.

As in *Lane*, the prosecutor here urged the jury to make its own factual determination and apply the law, which would result in a verdict that would bring justice for the family and Cory. These brief, isolated comments did not deny defendant a fair trial.

Lastly, defendant argues that the prosecutor committed misconduct by naming those who lost Cory and asking the jury to consider the losses they suffered. The prosecutor made brief comments at the beginning and end of his opening statement highlighting the emotional impact of the loss of Cory on her loved ones. We agree with defendant that these comments were an attempt to evoke the jury's sympathy. But the prosecutor did not urge the jury to convict on this basis or to ignore the evidence. Further, the trial court instructed the jury not to let sympathy influence the verdict and the jury is presumed to have followed its instructions. *Unger*, 278 Mich App at 237. Thus, to the extent that the prosecutor's isolated comments were improper, the comments were not unduly prejudicial and were cured by the trial court's instructions. Viewed the prosecutor's closing argument and rebuttal in their entirety, the challenged comments do not amount to plain error requiring reversal.

Defendant also argues that defense counsel was ineffective for failing to object to the prosecutor's closing and rebuttal arguments. We disagree. First, defense counsel's decision not to "raise objections, especially during closing arguments, can often be consistent with sound trial strategy." *Unger*, 278 Mich App at 242. Second, because the trial court's instructions to the jury were sufficient to cure any prejudice, defendant cannot establish that, but for counsel's failure to object, there is a reasonable probability that the result of the proceeding would have been different.

## III. ADDITIONAL CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant raises three additional claims of ineffective assistance of counsel. He contends that counsel was ineffective for (1) failing to object to crime scene and autopsy photographs, (2) failing to object to the testimony of Cory's father, David Ehlers, and (3) failing to impeach or

cross-examine Cory's friends, Brenda Gordon and Sarah Tryon, regarding their depictions of defendant's marriage and Cory's extramarital affair.[3]

## A.  AUTOPSY AND CRIME SCENE PHOTOGRAPHS

With respect to the admissibility of photographs, our Supreme Court has emphasized that "[g]ruesomeness alone need not cause exclusion" and "[t]he proper inquiry is always whether the probative value of the photographs is substantially outweighed by unfair prejudice." *People v Mills*, 450 Mich 61, 76; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995).  In *Mills*, the Court explained how to determine whether photographs are unduly prejudicial:

> Photographs that are merely calculated to arouse the sympathies or prejudices of the jury are properly excluded, particularly if they are not substantially necessary or instructive to show material facts or conditions.  If photographs which disclose the gruesome aspects of an accident or a crime are not pertinent, relevant, competent, or material on any issue in the case and serve the purpose solely of inflaming the minds of the jurors and prejudicing them against the accused, they should not be admitted in evidence.  However, if photographs are otherwise admissible for a proper purpose, they are not rendered inadmissible merely because they bring vividly to the jurors the details of a gruesome or shocking accident or crime, even though they may tend to arouse the passion or prejudice of the jurors.  Generally, also, the fact that a photograph is more effective than on oral description, and to the extent calculated to excite passion and prejudice, does not render it inadmissible in evidence.  [*Id*. at 76-77 (quotation marks and citations omitted).]

In this case, the prosecutor introduced the challenged autopsy and crime scene photographs for proper purposes.  The prosecutor used the autopsy photographs to supplement and corroborate the medical examiner's testimony concerning (1) the trajectory of the bullets, (2) the wound path, (3) Cory's injuries, (4) blood droplets that would have fallen from Cory's ear after the first shot, (5) stippling that demonstrated close-range firing, and (6) the bullet that was recovered from Cory's brain.  These purposes were relevant to explain the circumstances surrounding the shooting, including the length of time between the first and second gunshots, and defendant's and Cory's positioning during the shots, which in turn were relevant to the issue of defendant's intent, the principal issue at trial.  In addition, the prosecutor used the crime scene photographs to elucidate the witnesses' oral descriptions of the scene, including Steven Bott's observations from the front window and the responding officer's observations after Steven called 9-1-1.  The forensic technician also relied on the photographs to explain the trajectory of the bullets and his opinion regarding defendant's mode of shooting Cory.  Given these proper purposes for admission of the photographs, defendant fails to establish that defense counsel's decision to not object was objectively unreasonable.  Alternatively, even if defense counsel should have objected, defendant

---

[3] A claim of ineffective assistance of counsel presents a mixed question of fact and constitutional law, and we review the trial court's findings of fact for clear error and questions of constitutional law de novo.  See *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012).  Because a *Ginther* hearing was not held, our review of defendant's claims is limited to mistakes apparent on the record.  See *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

fails to demonstrate outcome-determinative prejudice from the admission of the photographs. As will be discussed in section V of this opinion, there was ample evidence to support the jury's verdict.

## B. DAVID'S TESTIMONY

Defendant next argues that David's testimony about Cory's character and interests, Cory's last words to David ("I love you."), and the family's photographs were irrelevant and unfairly prejudicial.

Generally, "[a]ll relevant evidence is admissible" and "[e]vidence which is not relevant is not admissible." MRE 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. MRE 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

David's testimony about Cory's personality and interests was relevant to the change in the couple's relationship over the years. David and other witnesses explained Cory's focus on spending time with the children. But the record also demonstrated that, as the marriage deteriorated, defendant became more withdrawn and would not always participate in family activities. This change caused tension in the relationship and made defendant's motive to kill Cory more probable. *People v Rice (On Remand)*, 235 Mich App 429, 440; 597 NW2d 843 (1999) ("Proof of motive in a prosecution for murder, although not essential, is always relevant . . . ."). Defense counsel was not ineffective for failing to make a futile objection. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Similarly, we discern no professional error in defense counsel's decision to not object to David's testimony regarding his relationship with Cory. David testified that he and Cory were "very close." He explained how often they saw each other—every two weeks—and that they spoke on the phone even more often. David also testified that Cory's last words to him the day before she was killed were that she loved him. All of these facts were probative of the relationship they shared and made David's observations about Cory, defendant, and their marriage more credible than they would have been if David and Cory shared a distant relationship. Because this evidence was relevant to David's credibility, it was not extraneous and did not create unfair prejudice.

Finally, defendant was not denied effective assistance of counsel by defense counsel's decision not to object to the introduction of family photographs. David identified Cory in two family photographs, which were admitted into evidence. Counsel's decision not to object may have been a strategic move designed to avoid drawing further attention to the photographs. See *Unger*, 278 Mich App at 242 (declining to raise objections can often be consistent with sound trial strategy). In any event, the photographs did not substantially prejudice defendant.

## C. IMPEACHMENT OF CORY'S FRIENDS

Defendant also argues that defense counsel was ineffective for failing to impeach or cross-examine Gordon and Tryon regarding their depictions of defendant's marriage with Cory's extramarital affair. Defendant argues that defense counsel let the jury believe that defendant was to blame for the marital problems.

Decisions regarding how to question witnesses are a matter of trial strategy. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). To begin, defendant's argument with respect to Gordon is inconsistent with the record. On recross-examination, defense counsel in fact elicited testimony from Gordon that she was aware of Cory's affair. Therefore, defendant cannot establish that defense counsel was ineffective for failing to question Gordon on this subject. Indeed, it was undisputed that Cory had an affair and there was testimony to that effect from other witnesses. The jury was free to infer that this was part of the marital strain between defendant and Cory. Under these circumstances, we fail to see how not questioning Tryon about the affair was professional error. Also, defendant does not demonstrate that, but for the alleged failure, the outcome of the trial would have been different. Defendant was not denied the effective assistance of counsel.

IV. *MIRANDA*

Defendant also argues that his statements to Sarah Perry, an investigator with Children's Protective Services (CPS), should have been excluded because he was in custody at the time of their interview and Perry's status as a state employee required *Miranda*[4] warnings before she could interview him.[5]

"[T]he *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *People v White*, 493 Mich 187, 195; 828 NW2d 329 (2013) (citation omitted). Here, the trial court found that defendant was in custody and that Perry's questioning constituted interrogation. The court concluded, however, that *Miranda* warnings were not required because there was no evidence that Perry was working in concert with the police.

As the trial court recognized, no published case from this state is directly on point. In *City of Grand Rapids v Impens*, 414 Mich 667; 327 NW2d 278 (1982), the defendant argued that a statement that he provided at Meijer to private security guards should have been suppressed because it was made without any *Miranda* warnings. *Id.* at 672. The Supreme Court explained that *Miranda* would only apply to bar the statement if "governmental involvement can be shown." *Id.* at 674. In *People v Porterfield*, 166 Mich App 562, 566-567; 420 NW2d 853 (1988), the defendant claimed that a CPS worker's testimony regarding the defendant's statement made during

---

[4] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[5] We review de novo a trial court's ultimate decision on a motion to suppress statements. *People v Hyde*, 285 Mich App 428, 436; 775 NW2d 833 (2009).

a child-neglect proceeding should not have been admitted because he had not been informed of his *Miranda* rights when he made the statement. In rejecting the defendant's claim on appeal, this Court concluded, "[A]lthough the caseworker was a state employee, she was not charged with enforcement of criminal laws and she was not acting at the behest of the police; therefore, she need not have advised [the] defendant of his *Miranda* rights." *Id*. at 567.

In *Perry*, however, the defendant was not in custody at the time of his statement. See *id*. The present case is further distinguishable because Perry met with the police before interviewing defendant. Thus, this case presents a close question. We need not decide this issue, however, because we concluded that even if Perry was required to provide *Miranda* warnings to defendant, any error in the admission of his statements to her was harmless beyond a reasonable doubt. See *People v Plumaj*, 284 Mich App 645, 650; 773 NW2d 763 (2009) ("If a case involves nonstructural, preserved constitutional error, an appellate court should reverse unless the prosecution can show that the error was harmless beyond a reasonable doubt.") (quotation omitted); *People v Whitehead*, 238 Mich App 1, 6-7; 604 NW2d 737 (1999) (holding that the admission of a confession, assuming it was improper, was a nonstructural error).

Defendant's statements to Perry were mostly duplicative of his statements in his earlier interview with the police. Therefore, even without the statements to Perry, the jury would have been aware of defendant's admissions to killing Cory. Further, defendant made a statement to Perry that was arguably favorable to the defense. Perry testified that defendant said that Cory had a smirk on her face "like she was winning some type of battle" right before defendant shot her. The admission of this statement actually supported defendant's defense that the shooting was impulsive and that he did not have the requisite intent for first-degree premeditated murder when he shot Cory. In light of the cumulative and potentially beneficial nature of defendant's statements to Perry, and given the overwhelming evidence against defendant, the admission of these statements was harmless.

## V. GREAT WEIGHT OF THE EVIDENCE

Defendant next argues that his conviction of first-degree premeditated murder is against the great weight of the evidence.[6]

A new trial may be granted, on some or all of the issues, if a verdict is against the great weight of the evidence. MCR 2.611(A)(1)(e); *Domako v Rowe*, 184 Mich App 137, 144; 457 NW2d 107 (1990), aff'd 438 Mich 347 (1991). Such a motion should be granted only when the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result. *People v Lemmon*, 456 Mich 625, 639, 642; 576 NW2d 129 (1998); *Unger*, 278 Mich App at 232. In *People v Musser*, 259 Mich App 215, 219; 673 NW2d 800 (2003), this Court explained:

---

[6] Defendant did not preserve this issue by raising it in a motion for a new trial. *People v Patterson*, 428 Mich 502, 514-515; 410 NW2d 733 (1987). "Unpreserved challenges to the great weight of the evidence are reviewed for plain error affecting the defendant's substantial rights." *People v Lopez*, 305 Mich App 686, 695; 854 NW2d 205 (2014).

-10-

"Conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial." *People v Lemmon*, 456 Mich 625, 647; 576 NW2d 129 (1998). "[U]nless it can be said that directly contradictory testimony was so far impeached that it 'was deprived of all probative value or that the jury could not believe it,' or contradicted indisputable physical facts or defied physical realities, the trial court must defer to the jury's determination." *Id*. at 645-646 (citation omitted).

"The elements of first-degree premeditated murder are (1) the intentional killing of a human (2) with premeditation and deliberation." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). Premeditation means "to think about beforehand," and deliberation means "to measure and evaluate the major facets of a choice or problem." *People v Plummer*, 229 Mich App 293, 300; 581 NW2d 753 (1998) (citation and quotation omitted). "The interval between the initial thought and ultimate action should be long enough to afford a reasonable person time to take a 'second look.' " *People v Gonzalez*, 468 Mich 636, 641; 664 NW2d 159 (2003) (citation omitted). Premeditation and deliberation "may be inferred from the circumstances surrounding the killing." *People v Anderson*, 209 Mich App 527, 537; 531 NW2d 780 (1995). "Premeditation may be established through evidence of (1) the prior relationship of the parties, (2) the defendant's actions before the killing, (3) the circumstances of the killing itself, and (4) the defendant's conduct after the homicide." *Unger*, 278 Mich App at 229.

Defendant cannot demonstrate that the evidence preponderated so heavily against the first-degree murder verdict so as to require a new trial. Rather, the evidence as a whole supports the jury's finding that defendant acted with premeditation and deliberation.

Testimony established the perilous state of the defendant and Cory's relationship. The couple was divorcing. After Christmas 2017, defendant discovered that Cory had cheated on him and the marriage hit "rock bottom." Witnesses testified that defendant stated that he did not care about Cory, he thought she was a horrible person, and he hated her. Cory's father described angry text messages that defendant sent about Cory. Just days before the shooting on March 12, 2018, Cory's friend thought Cory was scared of defendant and, out of concern for everyone's safety, the friend refused to return to Cory's house, where she had previously spent a great deal of time. Instead, she invited Cory to her house to get away "from the situation."

The jury could reasonably infer defendant's intent to murder Cory from his preparations and actions before and after the March 12, 2018 shooting. A few weeks earlier, defendant discussed killing Cory with both his father and his brother. He also purchased two boxes of ammunition for his handgun on February 21, 2018. When he went to his sister's house after the shooting, defendant had a paper with important phone numbers in his pocket. The jury could infer that defendant created the list in case he did not have access to his phone after the shooting. In fact, defendant left his phone at the crime scene and actually used the list to call his mother-in-law to arrange for childcare for the children.

Defendant's description of the circumstances surrounding the shooting further supported the requisite intent. Cory and defendant argued on March 12, 2018, before and after she met with her attorney at his law office to sign the divorce complaint. In the signed complaint, Cory requested "50/50" parenting time and equally divided holidays. Despite defendant's testimony at

trial that, during the argument, Cory suddenly threatened defendant's right to see the children, he told police that Cory had actually reassured him during the argument that he could see them. But the argument nevertheless continued. Defendant recalled going to the garage to retrieve his gun from its unlocked case. Then, he concealed the gun in his coat, returned to the house, and argued with Cory for a few more minutes. Defendant told the police that when Cory said he had 21 days to hire an attorney, he shot her. Then, after she fell onto the couch, defendant stepped toward Cory and shot her again. Both shots were aimed at Cory's head, and the second shot was fired into the back of Cory's head, after Cory fell on the couch, disabled from the first shot.

Different inferences could be drawn from this evidence. But drawing inferences and resolving questions of fact were tasks for the jury and it is not for this Court to resolve them anew. See *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). The jury's verdict is not against the great weight of the evidence.

## VI. CUMULATIVE ERROR

Defendant's last claim is that reversal is required because of the cumulative effect of defense counsel's alleged errors.

We review claims of cumulative error to determine if the combination of alleged errors denied the defendant a fair trial. *Brown*, 279 Mich App at 145. "The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal, but the cumulative effect of the errors must undermine the confidence in the reliability of the verdict before a new trial is granted." *Id*. at 146. "[O]nly 'actual errors' are aggregated when reviewing a cumulative-error argument." *People v Gaines*, 306 Mich App 289, 310; 856 NW2d 222 (2014).

In this case, the only meritorious claim of error was the prosecutor's isolated statements in closing argument that served no other purpose than to appeal to the jury's sympathy. As discussed, there was no objection, and the trial court instructed the jury to decide the case based on the evidence and not be swayed by sympathy. Given that we find no other error, there is no basis to find cumulative error. Accordingly, this argument fails.

Affirmed.

/s/ Michael J. Riordan
/s/ Douglas B. Shapiro
/s/ Amy Ronayne Krause

-12-